## FIDELITY & DEPOSIT CO. OF MARYLAND v. CLANTON.

No. 21007. Nov. 21, 1933.

Rehearing Denied Dec. 12, 1933.

Application for Leave to File Second Petition for Rehearing Denied Jan. 9, 1934.

pear therein. The cause was tried to the court and a judgment was rendered in favor of plaintiff in the sum of $10,000 against the Fidelity & Deposit Company, from which judgment this appeal has been lodged. The parties will be referred to as they appeared in the trial court.

The record discloses that Arey Clanton was a minor and was living in Creek county, and that on November 20, 1922, being then about 15 years of age, she married Ellis Williams. Prior thereto, guardianship proceedings were pending in the county court of Creek county wherein George T. Miller was duly appointed and acting as her guardian. In December, 1922, said guardianship was transferred to Okmulgee county, the said Miller continuing to serve as such guardian. In November, 1923, the said Ellis Williams instituted proceedings in the county court of Okmulgee county to remove George T. Miller as guardian of plaintiff, which proceedings were unsuccessful.

Plaintiff alleges in her petition that she is a Creek freedman and was the owner of considerable real and personal property, valued in excess of $50,000, and had an income in the sum of $800 per month; that after the unsuccessful attempt to remove George T. Miller as her guardian, her husband, Ellis Williams, took her to Douglas county, Neb., ostensibly for the purpose of visiting some of his relatives; that prior thereto the said Ellis Williams had entered into a conspiracy with one A. E. Graham for the purpose of cheating and defrauding plaintiff out of her property; that immediately after her arrival in Nebraska, her husband filed a petition in the county court of Douglas county, Neb., alleging that she was incompetent to manage her affairs, and prayed that he be appointed her guardian; that said court thereafter appointed the said Ellis Williams and one W. H. Hatteroth as joint guardians of plaintiff, and that they executed a guardianship bond in the sum of $10,000, pursuant to the requirements of the Nebraska statutes, with the Fidelity & Deposit Company of Maryand as surety on the said bond.

Plaintiff further alleges in her petition that the said Ellis Williams took possesson of her real and personal property under the order of the county court of Douglas county, Neb., and that under order of the county court of Okmulgee county, Okla., certain moneys and personal property were delivered into the possession of said joint guardians; but the record, as hereinafter

H. C. Thurman, for plaintiff in error.

Glenn O. Young, for defendant in error.

OSBORN, J. This action was filed in the district court of Creek county by Arey Clanton against the Fidelity & Deposit Company of Maryland for recovery on a guardian's bond. Ellis Williams, one of the joint guardians, was named as a defendant, but was not served and did not ap-

set out, discloses that the said George T. Miller continued to act as guardian of the estate of plaintiff, under directions of the county court of Okmulgee county, Okla., and continued to receive the income from her real property, and to dispose of a portion of the same under orders of said court, and that some of the personal property owned by plaintiff was not transferred to Nebraska, but remained stored in a residence belonging to plaintiff and in a business building, not owned by plaintiff, in the city of Okmulgee, Okla.

Plaintiff further alleges that on September 24, 1924, the said Ellis Williams and W. H. Hatteroth filed an application in the county court of Douglas county, Neb., to have plaintiff declared competent to manage her own affairs, and that pursuant thereto the court made such finding and ordered her restored to competency. Thereupon the joint guardians above named filed a final report purporting to account for all funds coming into their hands, and said court, after due notice, approved said report and ordered the discharge of said joint guardians.

Plaintiff alleges, however, that she had no knowledge or notice of the appointment of said guardians or of their discharge; that on or about September 5, 1924, the said Ellis Williams persuaded her to leave Nebraska and go to the state of Colorado to reside with his mother; that he thereafter continued to act as her guardian, notwithstanding said discharge, up to and including the first day of June, 1926, and during the period of time between the date of his appointment and said date he squandered, embezzled, and dissipated her money and property far in excess of $10,000, the amount of said bond; that they were divorced in November, 1926, and since said date she had not seen him and that she had no knowledge of his whereabouts. The petition alleges that Ellis Williams was, in fact, a resident of Creek county, Okla., but had absconded therefrom, and it was therefore impossible to secure service of summons upon him.

The contention of plaintiff in this appeal is stated in her brief as follows:

"It was plaintiff's contention below, and it is her contention here, that from the date of this order (of removal of funds and personal property from Oklahoma to Nebraska) it was jointly the duty of Ellis Williams and W. H. Hatteroth, as guardians, to take possession of all the personal property of the plaintiff, then in the hands of Miller as her Oklahoma guardian; to thereafter conserve, protect, and care for such property, in accordance with the duties enjoined upon them as guardians, and that for their failure so to do, either in person or by their agents, they became jointly and severally liable to the plaintiff."

We deem it unnecessary to set forth and analyze the evidence in detail; but a brief recitation of some of the evidence may serve the useful purpose of presenting the determinative legal question.

After the appointment and qualification of the Nebraska guardians, the county court of Okmulgee county ordered the transfer of the personal property from the Oklahoma guardian, George T. Miller, to the Nebraska guardians. It is to be noted, however, that George T. Miller still continued to act as guardian of plaintiff under proceedings pending in the county court of Okmulgee county, and continued to receive the income from plaintiff's lands which, having been developed for oil, yielded a considerable monthly income. The county court of Okmulgee county found that the said George T. Miller, as guardian, at the time of said order of removal of property, had on hand the sum of $63.90, which sum was delivered to the Nebraska guardians. In addition the following property was actually delivered into the hands of said guardians:

"One promissory note dated June 22, 1923, secured by first mortgage on real estate, signed by Emmet N. Hill and Nettie J. Hill, in the sum of $550.

"One seven-passenger Hudson Sedan automobile."

The following property was receipted for by the Nebraska guardians, but continued to remain in Oklahoma:

"All household goods and kitchen furniture located in dwelling house at 510 North Central Street, in Okmulgee, Okla.

"One set cafe fixtures located on East Fifth street, Okmulgee, Okla., in storage of J. A. Anderson."

The household goods remained in a house which was under the care and control of George T. Miller, guardian of plaintiff. The record does not disclose what became of the cafe fixtures.

It appears that the county court of Douglas county, Neb., authorized the guardians to expend $200 per month for the support of plaintiff; however, said guardianship was instituted on March 7, 1924, and was terminated on September 12, 1924, and during this period of time the Nebraska guardians were able to secure from the Oklahoma guardian only the following sums in

addition to the sum of $63.90 above mentioned: August 18, 1924, $100; August 28, 1924, $300; September 11, 1924, $300; making a total of $763.90, received by the Nebraska guardians. The automobile above mentioned was in the possession of plaintiff and her husband, Ellis Williams, and the record does not disclose its final disposition. The Hill note is not accounted for in the record. Plaintiff contends that the Nebraska guardianship proceeding was a continuation of conspiracy formed in Oklahoma between Ellis Williams and A. E. Graham, in which George T. Miller, the Oklahoma guardian, at times participated; and that the institution of guardianship proceedings in Nebraska was simply a continuation of their unsuccessful efforts to gain control of the trust property from the Oklahoma guardian and the Oklahoma court.

This contention is probably not without considerable merit. However, it appears that the Nebraska guardians filed in the county court of Douglas county, on September 4, 1924, an application to have plaintiff restored to competency and a final report accounting for all funds and moneys coming into their hands. The court made an order restoring plaintiff to competency, discharging said guardians, finding that said guardians had faithfully accounted for all funds coming into their hands, approved their final report, and discharged them as such guardians, said order having been made on September 4, 1924. On September 16, 1924, said guardians filed a final receipt purporting to have been signed by plaintiff, and on the same date the court entered a final order of discharge of said guardians. It is contended by plaintiff that said final receipt was a forgery, and on the trial of this case much evidence was introduced of a convincing nature on this point.

Several interesting questions of law are presented in the briefs. But the determinative question is, we believe, whether or not said order approving the report of the Nebraska guardians and discharging them is of such conclusive effect as to preclude the plaintiff in this action from recovering while said orders of said Nebraska court are unvacated, unappealed from and still in full force and effect. In other words, can the district court of Creek county, notwithstanding said orders of the Nebraska court, render judgment against the surety on the guardians' bond given pursuant to the proceeding in the Nebraska court, after the Nebraska court has

adjudged that the guardians appointed by said court have faithfully executed their duties pursuant to the Nebraska laws?

Defendant has pleaded, defensively, the pertinent provisions of the Nebraska statutes and the decisions of the Supreme Court of that state construing the same. In 34 C. J. 1125, sec. 1602, we find the following rule of law, supported by many citations from authorities from the various states:

"* * * But it is now settled that judgments rendered by courts of sister states are entitled to the same recognition accorded to judgments of domestic courts; and that they are entitled to the same faith and credit in every state as in the state where rendered so that they are or are not valid and conclusive in other states accordingly as they are or are not in the state of their rendition. The obligation to accord full faith and credit to a valid judgment, other than for lack of jurisdiction of the person or subject-matter, or for the enforcement of a penalty, is without limitation, * * * Also, the constitutional and statutory provisions referred to protect a judgment of a court of a sister state against collateral impeachment. * * *"

In the recent case of Roche v. McDonald, 275 U. S. 449, 72 L. Ed. 365, 48 Sup. Ct. Rep. 142, 53 A. L. R. 1141, it is said:

"It is settled by repeated decisions of this court that the full faith and credit clause of the Constitution requires that the judgment of a state court which had jurisdiction of the parties and the subject-matter in suit, shall be given in the courts of every other state the same credit, validity and effect which it has in the state where it was rendered, and be equally conclusive upon the merits; and that only such defenses as would be good to a suit thereon in that state can be relied on in the courts of any other state. [Citing authorities.] This rule is applicable where a judgment in one state is based upon a cause of action which arose in the state in which it is sought to be enforced, as well as in other cases; and the judgment, if valid where rendered, must be enforced in such other state, although repugnant to its own statutes. * * *"

It is proper, therefore, for us to turn to the Nebraska cases to determine the effect to be given to the judgment in that state. In the case of Foote v. Crittenden, 106 Neb. 704, 184 N. W. 167, the second paragraph of the syllabus is:

"In Nebraska, county courts are courts of record. They have exclusive original jurisdiction of guardianship and probate

proceedings, and as to such matters they are courts of general, superior, and not inferior, jurisdiction. Their records import verity and their proceedings possess, as a rule, the same presumptions of jurisdiction and regularity possessed by courts of superior common-law jurisdiction. All matters necessary to give the court jurisdiction, upon which the record is silent, are presumed."

In the case of Langdon v. Langdon, 104 Neb. 619, 178 N. W. 178, the syllabus is:

"The county court has exclusive jurisdiction to determine the state of accounts between the guardian and ward, and no action can be maintained upon a guardian's bond until the amount to be due from the guardian is first ascertained on the settlement of the guardian's final account by the county court.

"The order and decree of the county court as to the amount due from the guardian to his ward upon the final accounting and settlement of the guardian is final and conclusive upon the sureties upon the guardian's bond both as to the bond entered into upon his appointment or for any bond he may have been required to give under a license to sell his ward's real estate."

In the case of Bisby v. Gleason, 21 Neb. 534, 32 N. W. 578, the syllabus is:

"A right of action on a guardian's bond to recover the amount remaining in the hands of the guardian first accrues to the ward when such amount is ascertained by the county court on the settlement of the guardian's final account. Ball v. LaClair, 17 Neb. 39, 22 N. W. 118.

"Where a guardian is cited by the county court to appear and settle his accounts upon the termination of his trust, and he refuses to appear in answer to such citation, it is the duty of the county court to ascertain and declare the condition of the accounts in his absence, and charge him with the money and property in his hands after allowing all just credits; and, for the purpose of such settlement, the jurisdiction of the county court is exclusive."

In the case of In re Ramp's Estate (Dafoe) v. Berry, 113 Neb. 3, 201 N. W. 676, the first, third, and fifth paragraphs of the syllabus are:

"When, in a suit brought by one claiming to be the guardian of an insane person by virtue of an appointment made by the county court of Johnson county against one claiming to be the guardian of the same person under an appointment made by the county court of Seward county, the form of the petition is such as to call for relief other than the impeachment and revocation of the order of appointment made by the county court of the latter county,

the action will be held to be a collateral attack upon the judgment assailed."

"In this state, county courts have exclusive original jurisdiction of guardianship proceedings, and in matters falling within that jurisdiction, their judgments are as conclusive as those of any other court of record."

"An action or proceeding such as motion or other proceeding to vacate, annul, cancel, set aside, or review judgment in appellate court, whether by appeal, error, certiorari, bill of review, or, under some circumstances, action to quiet title, is 'direct attack' on judgment; but if action or proceeding has independent purpose and contemplates some other relief or result, although overturning judgment may be important or even necessary, attack upon judgment is collateral."

Whether this proceeding constitutes a direct or collateral attack upon the proceedings of the county court of Douglas county, Neb., as such attacks are defined by the Oklahoma decisions, we deem it unnecessary to determine; for we must look to the conclusive effect of said judgment as determined by the Nebraska laws and the Nebraska courts. We might mention that the plaintiff has a remedy against the alleged fraud as set forth in the case of Langdon v. Langdon, supra, and in the case of In re Hilton (Hilton v. Nyberg), 99 Neb. 387, 156 N. W. 659. We may observe, however, that in this action the plaintiff does not ask for the vacation, modification, or nullification of the judgment and the proceedings of the Nebraska court; but this is an action against the surety alone, primarily for the recovery of a judgment on the guardianship bond and only incidentally is reference made to the guardianship proceedings. One of the joint guardians, W. H. Hatteroth, a resident of Nebraska, and whose rights would be materially affected by the vacation or modification of said judgment, is not even a named party in this action, and the other joint guardian, Ellis Williams, although named as a party defendant, was not served with summons either personally or constructively.

Under the Nebraska decisions, it appears that the county court had original and exclusive jurisdiction to require a faithful accounting by the joint guardians under their trust, and that said determination would be conclusive, until reversed, vacated, set aside, or modified in a manner authorized by law, not only as against said guardians but as against the surety on their guardian's bond, defendant in this

case. Even though fraud were practiced by said guardians in procuring their discharge, and the conclusive determination in their favor and in favor of their surety of matters absolving them from liability by reason of their actions relating to their trust, the determination by said court, in which jurisdiction was lodged to make said determination, in the absence of proper proceedings to correct, review, or vacate such erroneous order, would be final and conclusive under the Nebraska laws.

Giving full faith and credit to said judgment, when pleaded as a defense in the courts of this state, we must conclude that said judgment unvacated, unappealed from, and unmodified, constituted, when collaterally attacked, a full and complete defense to the alleged cause of action of plaintiff in this action, and that the judgment of the trial court is therefore erroneous.

We are not herein adjudicating whether or not, under proper pleadings and with proper parties before the court, the district court of Creek county may inquire into the judgment of the county court of Douglas county, Neb., by reason of alleged fraud extraneous to the issues involved in said guardianship proceedings, as said question is not properly presented by the record in this case.

We deem that the above decides the controlling question of this case, but inasmuch as defendant has raised the question that as said bond was given in the state of Nebraska, no cause of action thereon can be maintained in this state, we determine said question contrary to defendant's contention. Hayes v. King, 44 Okla. 180, 143 P. 1142; U. S. F. & G. Co. v. Parker, 20 Wyo. 29, 121 P. 531.

Defendant further contends that it is a surety company authorized to do business in the state of Oklahoma and is required to appoint a service agent in this state under the provisions of section 6683, C. O. S. 1921, and that service of process upon it in a cause of action accruing outside of the state of Oklahoma is unauthorized. This question is not properly before us, for the reason that the record discloses that defendant entered a general appearance by filing a demurrer and answer without properly attacking the service of said summons.

For the reasons given, the cause is reversed and remanded to the trial court for further proceedings not inconsistent herewith.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BUSBY, and WELCH, JJ., concur. RILEY, C. J., and BAYLESS. J., absent.