## OKLAHOMA GAS & ELECTRIC CO. v. OKLAHOMA TAX COMMISSION et al.

No. 26901.    May 5, 1936.

Rehearing Denied June 2, 1936.

Rainey, Flynn, Green & Anderson and Calvin Jones, for plaintiff in error.

C. D. Cund, C. W. King, A. L. Herr, and W. A. Dillon, for defendants in error.

WELCH, J. This appeal involves the question of whether or not the sale of electric power to the state, counties, cities, churches, charitable institutions, schools, lodges, hospitals and fraternal organizations, and used by them for power and light, is subject to the provisions of the sales tax law of 1933. A tax on such sales was paid under protest, and upon suit to recover same plaintiff's right to recover was denied.

The cause is presented upon the following proposition:

"The Oklahoma Sales Tax Law of 1933, same being chapter 196, Session Laws of 1933, laid a tax upon the sales of electricity, electric current and electric power only where such sales are to domestic or industrial consumers thereof, and sales to any other consumers are not taxable; the sales involved herein were not to either domestic or industrial consumers, and, therefore, plaintiff should recover the taxes it has paid on account thereof."

The question requires the construction of that portion of the 1933 sales tax law which we quote as follows:

"There is hereby levied a tax of one per centum (1%) upon the gross proceeds of all sales of tangible personal property consisting of goods, wares or merchandise, sold at retail in the state of Oklahoma, to consumers or users; and a like tax upon the gross proceeds of all sales, within this state, derived from the following:

"* * * Upon all sales of electricity, electric light current, electric power. gas (natural or artificial) to domestic or industrial consumers thereof. * * *"

Our consideration is ultimately narrowed to the construction of the last hereinabove quoted paragraph of law.

The controversy concerns the extent of the meaning of the phrase therein used "to domestic or industrial consumers thereof." The briefs are devoted largely to the question of the legislative intent in the use of these quoted words. Plaintiff contends that these words have a highly restrictive meaning, and that the electricity sales here involved were not made to exactly domestic consumers nor exactly industrial consum-ers, and that therefore the act does not apply. · Upon the other hand, the Tax Commission contends that the quoted words were used in their broad and general sense, and that it was the legislative intent to cover all such sales as are here involved.

In the case of Loren E. Kimball v. Northeast Harbor Water Co. 78 Atl. 865, 32 L. R. A. (N. S.) 805, the Supreme Court of Maine construed the use of water for the operation of an elevator in a summer hotel to be within the term "domestic," as used in a provision of law chartering a water company, and in the case of City of Erie v. Erie Gas & Mineral Co. (Kan.) 97 P. 468, the court construed "domestic purposes," as used in a contract, as covering a field broader than that conceived here by plaintiff. We quote the fourth paragraph of the syllabus thereof as follows:

" 'Domestic purposes,' as the term is here used, includes gas furnished for homes, churches, stores, offices, and the opera house, where its principal use is for heating and lighting, and not for power."

In Spring Valley Water Works v. City and County of San Francisco, 52 Cal. 111, the Supreme Court of California construed "family uses," as used in an act requiring a corporation to furnish pure fresh water to the inhabitants of the city for family uses, to be sufficient to include therein the requirement that such water be furnished to hospitals, poorhouses, schools, and other institutions, pointing out therein that the purpose for which same is used, rather than the place used, as being the proper criterion.

The case of Pejepscot Paper Co. v. Town of Lisbon (Me.) 142 Atl. 194, is substantially to the same effect, as well as Metropolitan Water Board v. Avery, [1914] A. C. 118, Ann. Cas. 1914D, 556.

It is obvious that the paragraph of the statute here in question is not crystal clear or unequivocal in its meaning, and the clause standing alone leads readily to sharp differences of opinion as to its meaning, and if we were without further means than resort to the words thereof alone which we have quoted, doubt might exist as to the real legislative intent.

Such condition of the statute, however, justifies our reference to the title of the act itself in our effort to arrive at the true intent of the Legislature, which after all is the primary duty of the court. See State ex rel. Board of Education of City of Tulsa v. Morley, 168 Okla. 259, 34 P. (2d) 258, wherein this court held in the third paragraph of the syllabus:

"When the meaning of a portion of the body of a legislative act is uncertain, it is proper to consider the title of the act to determine the legislative intent, in this jurisdiction where the Constitution requires that the purpose of an act be clearly expressed in its title." (Section 57, art. 5, Const. Okla.)

The title of the act under consideration here provides in part as follows:

"An act · providing for relief from ad valorem taxation by levying a sales tax upon the gross proceeds derived from all sales of goods, wares and merchandise, including food, confections and drinks prepared by hotels, restaurants or other dispensers and served or otherwise disposed of, and from all sales of tickets or admissions to places of amusement and athletic events, and from all sales of electricity and gas, and from all sales of telephone, telegraph and radiocasting services. * * *"

An examination of such title shows clearly that the act was intended to levy a sales tax upon "all sales of electricity and gas." This being true, it is readily apparent that if the purview of the act should receive the construction contended for here by the plaintiff, it would be wholly out of harmony with the title. The title of the act and the act itself as a whole clearly reflects the intention of the Legislature to levy a sales tax upon all sales of electricity and gas, except such as might be specifically exempted therefrom. Neither the title nor the act itself lends credence to the argument that the sales here shown were intended to be exempted from its operation, and it is our conclusion that an examination of the title dispels any doubt as to the meaning and intention of the Legislature.

It is further contended by plaintiff that the state and the municipal subdivisions thereof are presumptively exempted from the payment of the tax. The rules of law in this regard are discussed at considerable length in City of Ardmore v. State, 168 Okla. 316, 32 P. (2d) 728, wherein this court in a recent case concluded that a municipal subdivision of the state must pay the tax upon purchase of gasoline.

Inasmuch as the Legislature in the act under consideration dealt affirmatively with specific exemptions, and did specifically exempt sales "by the state and its municipal subdivisions," it is our conclusion that the fact that they did not thereby specifically exempt sales to the state and its municipal subdivisions indicated its intention not to do so.

No question is presented as to the right of plaintiff to maintain this action for recovery of sales tax paid, and we express no opinion thereon.

The judgment of the trial court denying plaintiff's recovery is affirmed.

McNEILL, C. J., and RILEY, BUSBY PHELPS, and CORN, JJ., concur. GIBSON, J., dissents. OSBORN, V. C. J., and BAYLESS, J., absent.