WELCH v. SIMMONS et al.

No. 30163. May 5, 1942.

Rehearing Denied May 26, 1942.

*126 P. 2d 89.*

John Staley, of Oklahoma City, for plaintiff in error.

Swank & Swank, of Stillwater, for defendants in error.

DAVISON, J. This is an action by Edgar Welch, a resident of this state, as plaintiff, against Grace Simmons and Harry M. Schriver, both nonresidents of this state, as defendants, to recover damages for an asserted tort alleged to have been committed in Illinois.

The plaintiff is seeking damages, compensatory and exemplary, in the sum of $2,900 for having been (as he avers) wrongfully arrested, illegally imprisoned, and maliciously prosecuted in Rock Island county, Ill., at the instance of the defendants.

At the time the action was instituted a garnishment summons was issued to the Illinois Oil Company, a foreign corporation, domesticated and conducting a part of its business in Oklahoma. Service of summons upon the defendant Schriver was obtained outside the state under the provisions of 12 O. S. 1941 § 175, as a substitute for service upon a nonresident by publication. Service by publication was obtained upon the defendant Grace Simmons.

Thus, at the institution of the action, the trial court had no jurisdiction over

the person of the defendants. Its jurisdiction, if any, was wholly in rem, and the existence as well as the extent of such jurisdiction depended entirely on the indebtedness of the Illinois Oil Company to the defendants and whether such indebtedness was legally subject to garnishment in this action. Sylvester Pennoyer v. Marcus Neff, 95 U. S. 714, 24 L. Ed. 565.

The Illinois Oil Company, after appearing specially to challenge the jurisdiction of the court to issue the garnishment process, filed its answer in which it disclosed that the defendants were stockholders of the corporation, and that it (the garnishee corporation) was indebted to the defendants for accumulated dividends on the stock. The amount of the accumulated dividends was not disclosed. It was described as a "small amount." Thus the extent to which jurisdiction in rem is asserted to have attached at the commencement of this action cannot be stated in this opinion in terms of dollars and cents. It can only be said that if it existed it did not exceed the amount of the indebtedness.

Of course, in a transitory action where jurisdiction is not wholly dependent on venue, a defendant may by entering a general appearance confer jurisdiction over the person where none previously existed. This is true even though jurisdiction in rem was nonexistent or improperly assumed prior to the entry of appearance. Service Printing Co. v. Wallace, 179 Okla. 58, 64 P. 2d 863; Fidelity & Deposit Co. of Maryland v. Clanton, 167 Okla. 106, 28 P. 2d 566; Ada-Konawa Bridge Co. v. Cargo, 163 Okla. 122, 21 P. 2d 1.

The trial court, in its early rulings as reflected by its orders, held in effect that it had jurisdiction over the subject matter of this action by reason of the garnishment. After the defendants had pleaded to the merits, it reconsidered its former action and orders and determined, as reflected in its order upon such reconsideration, that it was "without jurisdiction over either the person of the defendant or the subject matter of the action." Upon this basis it dismissed the action as to each of the defendants in separate orders (the quotation above is from the order disposing of the cause as to the defendant Schriver).

In so holding the trial court adopted the theory that our statutes are not so drafted as to authorize garnishment against a nonresident to satisfy a claim or demand resting upon tort and not reduced to judgment. It also held that neither of the defendants had entered such an appearance as to vest the court with jurisdiction of the person.

The plaintiff in presenting his case on appeal asserts that the trial court was wrong in both particulars.

We have concluded that the decision of the trial court was correct on both points for reasons which we shall subsequently state.

It is unnecessary for us to review and consider the appeal as to the defendant Grace Simmons. She prevailed in the trial court, but subsequent to the perfection of the appeal the plaintiff abandoned his appeal as to her by motion to dismiss. Since our decision is favorable to her codefendant, no question arises as to the right of a plaintiff to settle with one of two joint tort-feasors against whom he has been proceeding jointly. Thus authorities presented in the briefs on that point will not be herein reviewed.

We shall first consider the legal basis of our conclusion that the Legislature of this state has not authorized garnishment at the institution of actions against nonresidents based upon torts committed outside the state. The plaintiff claims that it has and bases his contention upon 12 O. S. 1941 § 1172, which has been a part of the statutory law of this state since its passage and approval as an amendatory act by chapter 45, S. L. 1923. That section, since its amendment, authorizes the filing of a garnishment affidavit in "all civil actions," and the subsequent section, 12 O. S. 1941 § 1173, provides for garnishment summons up-

on such affidavit. The plaintiff points out that prior to the 1923 amendatory act the scope of the section was limited to:

". . . any action to recover damages founded upon contract, express or implied, or upon judgment or decree. . . ." (See section 4823, R. L. 1910.)

He reasons that since the Legislature by the act of 1923 substituted for the last above-quoted language the language "in all civil actions," the provisions of the garnishment law were extended to torts, and that since there is no provision within the section excluding from its operation torts of nonresidents committed outside the state, garnishment was available to him in this action at the time of its institution.

The reasoning is not without logic, but it overlooks certain controlling considerations. It fails to recognize the relation of this statute to other related statutory provisions which have been previously construed in conjunction therewith under the act as it existed prior to 1923. The amendment of 1923 was not such as to nullify or sever the previous connection judicially recognized.

The question is one of statutory construction. The controlling consideration is the legislative intent when ascertained. Sheridan Oil Co. v. Superior Court of Creek County, 183 Okla. 372, 82 P. 2d 832. In determining that intent, various factors claim a degree of consideration. Among these are: the purpose to be accomplished by the act (In re Cleveland's Claim, 72 Okla. 279, 180 P. 852; Blevins v. Graham Co., 72 Okla. 308, 182 P. 247; Brown v. Woods, 2 Okla. 601, 39 P. 473); the history of the statute (Pure Oil Co. v. Cornish, 174 Okla. 615, 52 P. 2d 832; Ramsey v. Leeper, 168 Okla. 43, 31 P. 2d 852); and when doubt exists the title of the act may also be considered (State v. Morley, 168 Okla. 259, 34 P. 2d 258; Oklahoma Gas & Electric Co. v. Oklahoma Tax Commission, 177 Okla. 179, 58 P. 2d 124); as well as other enactments on the same subject (De Hasque v. Atchison, T. & S. F. R. Co., 68 Okla. 183, 173 P. 73).

When the purpose of the legislation is ascertained, upon consideration of appropriate rules of construction, to have been at variance with the literal meaning of the language used in the statute, such language may be thereby modified to conform to the legislative intent. Rollins v. Heuman, 171 Okla. 435, 43 P. 2d 147; Brown v. Woods, supra; De Hasque v. Atchison, T. & S. F. R. Co., supra.

An examination of our attachment and garnishment statutes discloses that the same were originally adopted from Kansas in 1893. They were re-enacted with minor changes by the Legislature when it adopted the Revised Laws of 1910.

While there are basic distinctions between attachment and garnishment, they are both provisional ancillary remedies, and their history from a legislative standpoint discloses that they have gone "hand in hand." In the Revised Laws of 1910 they were carried forward and re-enacted in the same chapter, chapter 60, art. 9, R. L. 1910. The section here relied upon by the plaintiff is section 4823. The first section in the same chapter, section 4812 (now 12 O. S. 1941 § 1151), which literally refers only to attachment, provides in part:

"The plaintiff in a civil action for the recovery of money may, at or after the commencement thereof, have an attachment against the property of the defendant, and upon the grounds herein stated:

"First. When the defendant, or one of several defendants, is a foreign corporation, or a nonresident of this state (but no order of attachment shall be issued on the ground or grounds in this clause stated for any claim other than a debt or demand arising upon contract, judgment or decree, unless the cause of action arose wholly within the limits of this state, which fact must be established on the trial)."

The foregoing provision of the statute has not been changed. In the case of Kidd v. Seifert, 11 Okla. 32, 65 P. 931,

this court said, speaking through Chief Justice Burford:

"As originally enacted by the Legislature of Kansas, no attachment could issue against a nonresident in actions ex delicto, but, by the revision of 1868 and the amendment of 1870, attachments were authorized in actions for money damages sounding in tort, if the cause of action arose wholly within the state, and we have accepted and adopted the statute with its amendments, history, and construction. The reason for limiting attachments in this class of cases to actions for torts committed within the territory is obviously one of policy. It is not intended that a nonresident plaintiff may sue a nonresident defendant, who may own property in our territory, for a tort committed in some other state, and compel such defendant to come into our jurisdiction to defend such action. It is only where the nonresident defendant has done or caused to be done within this territory the acts out of which the cause of action arises that he may be compelled to defend the action in our courts."

At that time the garnishment at the institution of the action was, as we have noticed, made available only in actions for damages founded on contract.

Strong legislative reason, no doubt, existed to extend garnishment to those actions, ex delicto, in which the companion provisional remedy of attachment was available and no doubt that is what the Legislature intended to accomplish. But we cannot perceive in the change of language employed in the amendatory act (chapter 45, S. L. 1923) an intention on the part of the Legislature to depart from the public policy of preventing suits based upon jurisdiction in rem against nonresidents for torts committed outside the state. No such change of public policy was indicated by the mere fact that the Legislature chose language broad enough, if taken literally, to accomplish the purpose. Had the Legislature intended to reverse the public policy of the state on this particular character of litigation, it would unquestionably have stricken the prohibiting clause from section 1151 of 12 O. S. 1941, supra.

No sound reason can be ascertained for suit based upon jurisdiction in rem against a nonresident for a tort committed outside the state when the ancillary proceeding is garnishment, when such a suit cannot be maintained where the ancillary remedy is attachment. Such a hiatus in the law would not only be irrational, it would border on absurdity.

Further indication of the legislative intent that the continued consideration of the garnishment law should be in conjunction with the law relating to attachment is found in the title of the 1923 act, which reads:

"An Act amending section 354, of article 9, chapter 3, Compiled Statutes of Oklahoma, 1921, relating to attachment and garnishment."

Thus, although the body of the section refers only to garnishment, its close relation to attachment was recognized by reference thereto in the title of the act.

If additional reason be sought for the view here taken, it may be found in the fact that this court has twice alluded to the limitation in section 1151, supra, as applicable to garnishment authorized under subsequent sections. Osage Oil & Refining Co. v. Gormley, 116 Okla. 284, 244 P. 434; Oklahoma Tool & Supply Co. v. Drumright State Bank, 97 Okla. 165, 222 P. 975. While these cases originated before the effective date of the 1923 amending act, it is appropriate to notice that they construed the two statutes together in the respect herein indicated. They are thus equally in point after the amendatory act, since nothing in that act indicated that such co-ordinated construction should not be maintained. In fact, as we have noticed, the title of the act indicated that it should.

Upon the foregoing consideration we conclude, and hold, that in an action against a nonresident based upon a tort committed wholly outside the state, jurisdiction in rem cannot be acquired by garnishment at the institution of the action.

It follows that the trial court had neither jurisdiction in rem nor jurisdiction in personam, and therefore had no jurisdiction at the institution of this action.

The remaining question is: Did the defendant Schriver enter his general appearance and thus confer jurisdiction in the court over his person? He first filed a special appearance and motion to quash the summons on the grounds that the summons was not "issued, served and returned according to law." Such a motion did not constitute a general appearance (Jones v. Norris, 176 Okla. 434, 55 P. 2d 984; Kansas, O. & G. Ry. Co. v. Martin, 175 Okla. 73, 51 P. 2d 577); and where such a motion is erroneously overruled and exceptions taken, the defendant may, without curing the error, subsequently plead to the merits, if he refrains from seeking affirmative relief. Bank of Tuskahoma v. J. B. Klein Iron & Foundry Co., 180 Okla. 42, 68 P. 2d 777; F. C. Austin Mfg. Co. v. Hunter, 16 Okla. 86, 86 P. 293; also cases cited supra. Such a course may be safely pursued where jurisdiction over the person is sought to be defeated or prevented on grounds other than those connected directly with the *issuing, serving,* and *returning* of the summons. Bank of Tuskahoma v. J. B. Klein Iron & Foundry Co., supra.

Herein the petition of the plaintiff affirmatively disclosed on its face that no cause of action vesting the court with jurisdiction in rem existed or could be stated against a nonresident who could not be served in Oklahoma. However, it is extremely doubtful if the grounds stated in the motion filed by the defendant were sufficient in themselves to raise the question properly. Ada-Konawa Bridge Co. v. Cargo, supra. If the motion had been overruled, it is doubtful if error could be predicated thereon, at least in the absence of an affirmative appearance in the record that the trial court and the parties to the controversy treated the motion as broad enough to present the question. Ada-Konawa Bridge Co. v. Cargo, supra.

However, the order we are here reviewing sustained the motion, and it affirmatively and positively appears from the record that the trial court treated the motion to quash as broad enough to raise the question. Its ruling was based squarely on a determination of its want of jurisdiction over the person or subject matter of the action. The regularity of the manner in which the summons was issued, served, and returned was not the basis of dispute under the motion. The controversy between the parties was over the jurisdiction of the court.

Now, let us consider the fundamental aspects of motions and the part they play in trial court procedure. Motions are not pleadings in a strict sense, but their use is authorized by statute, 12 O. S. 1941 § 1110, which provides:

"A motion is an application for an order, addressed to the court, or a judge in vacation, or by any party to a suit or proceeding, or one interested therein, or affected thereby."

The statute does not require that they be in writing, although orderly procedure suggests and sometimes court rules require that they shall. This court has held that in the absence of a requirement by statute or court rules a motion may be orally made. Van Curon v. King, 93 Okla. 1, 219 P. 337. Our holding in this respect is in accord with the decisions in other jurisdictions. Bancroft's Practice, p. 7657. If a motion itself may in some instances be oral, it would seem wholly presumptuous to hold that oral elaboration on the grounds or basis of the motion cannot be condoned by a trial court.

The excused inadequacy of a motion upon favorable ruling is comparable in many respects with the doctrine of aider by verdict which obtains in connection with other and more formal aspects of trial court procedure.

We are of the opinion, and hold in this case, that since the trial court treated the motion as adequate to raise the question of jurisdiction and made a rul-

616

ing favorable to the defendant upon that theory, and since the parties presented that question under the motion, thus treating it as adequate, and since the motion in its abbreviated and possibly inadequate form in no way entered a general appearance, the literal inadequacy of the motion does not constitute reversible error.

In so holding we do not approve the procedure of using inadequate written motions nor do we approve the use of oral motions in connection with formal questions, but merely hold that reversible error was not committed in this case by sustaining an inadequate motion on a meritorious ground which was treated by the parties as the issue under the motion.

The decision of the trial court is affirmed.

WELCH, C.J., CORN, V. C. J., and RILEY and GIBSON, JJ., concur. HURST, J., concurs in conclusion, but dissents as to syllabus 1. BAYLESS, J., dissents. OSBORN, J., absent. ARNOLD, J., disqualified and not participating.