ARMOUR & CO. v. BARKER.

No. 30936. Sept. 21, 1943.

Rehearing Denied Feb. 5, 1946.

*165 P. 2d 624.*

Keaton, Wells & Johnston, Willingham & Fariss, and T. K. Quillin, all of Oklahoma City, for plaintiff in error.

Paul W. Updegraff and Justin Hinshaw, both of Norman, for defendants in error.

DAVISON, J. Mae E. Barker and others, as plaintiffs, and as the heirs of

John M. Barker, deceased, recovered a judgment in the district court of Cleveland county against Armour & Company, an Illinois corporation, adjudging them to be the owners of certain designated shares of stock in the defendant company and directing the defendant company to recognize their ownership thereof, or in lieu thereof, to pay them the sum of $950, the stipulated value of the stock, plus accumulative dividends in the sum of $60.

Though relatively unimportant in connection with the legal principles which govern our disposition of this cause, a brief description of the transactions connected with the corporate stock is not out of place in this opinion.

The deceased, John M. Barker, and one of his brothers, C. B. Barker, also now deceased, were residents of Oklahoma. They were members of a family of nine children and were raised in the State of New York. The two brothers above named came to Oklahoma and established themselves here. Their aging mother was left in New York. One of their sisters, a Mrs. Lula Fess, also remained there.

The children contributed in unequal portions to the support of the mother and the maintenance of the property in which she continued to reside.

C. B. Barker was the more prosperous of the two brothers above named and apparently contributed more than did John M. Barker. In 1935 C. B. Barker purchased and paid for, through Fenner & Beane, New York brokers, 30 shares of stock in the defendant corporation, of which 10 shares represented by one certificate were issued in the name of John M. Barker. Later, this certificate was forwarded by C. B. Barker to Mrs. Fess in New York with directions to dispose of the same through the New York brokers and deposit the proceeds in a bank account for use in the maintenance of the New York property in which the mother had lived. The mother was then deceased.

The certificate of stock was surrendered and canceled and the sister received the proceeds. The certificate when surrendered bore what purported to be the signature of John M. Barker, and the signature of his wife, Mae E. Barker, plaintiff.

There is evidence in the record supporting the view that C. B. Barker delivered the certificate to his brother, who kept it in a safety deposit box. That during an illness of John M. Barker, C. B. Barker removed it from the safety deposit box. There is also evidence that the purported endorsement of John M. Barker on this certificate was not genuine. However, it is undisputed that the signature of Mae E. Barker is genuine. She explains that she signed the stock certificate at the request of C. B. Barker without knowing or inquiring what she was signing.

The plaintiffs prosecuted the suit on the theory that John M. Barker became the legal and equitable owner of the stock and never parted with his ownership; that the stock certificate was wrongfully appropriated and converted, and that the defendant by honoring the certificate with a forged endorsement thereon became and was a party to such conversion. On this theory the plaintiffs prevailed and defendant appeals.

The controlling question in this case is one of procedure.

The Armour & Company against which this action is prosecuted is an Illinois corporation. It was formerly domesticated in this state, but later ceased to do business here and formally withdrew from the state on September 15, 1934.

There is another Armour & Company, a Delaware corporation, which is now doing business here. This latter corporation was named defendant in plaintiffs' first petition, but the Illinois corporation was later substituted.

The plaintiffs attempted to obtain jurisdiction of the defendant corporation by service of summons on the Secretary of State. The attorneys for the defendant filed in its behalf as their

first step in this action a "Special Appearance and Motion to Quash" which read:

"Comes now Armour and Company, a corporation organized and existing under the laws of Delaware, designated in the petition as the defendant, and appearing specially and only for the purpose of this motion, moves the court to quash the summons and the service thereof for the reason that the same was not issued and served according to law."

It is to be noted that the motion is drafted in the form commonly used in this jurisdiction for challenging by special appearance the sufficiency of the summons as issued and served. The special appearance was for the Delaware corporation, which plaintiffs were then proceeding against.

The day after this motion was filed, plaintiffs obtained leave of court to proceed against the Illinois corporation instead of the Delaware corporation. A new summons called an alias summons was issued and served on the Secretary of State. Defendant's attorneys filed another special appearance and motion to quash identical with the first. Apparently through inadvertence they designated their client as the Delaware corporation. They then orally asked and obtained leave to amend their special appearance and motion to quash. The order granting such leave reads:

"Now on this 2nd day of December, 1940, the matter came on for hearing and upon the oral application of the defendant, Armour & Co., to amend their special appearance and motion to quash and the court granted Armour & Company ten days from this day to file an amended special appearance and motion to quash."

The amended special appearance and motion to quash was the same as the first except that the defendant was referred to as an Illinois corporation and the motion recited that leave of court had been obtained to file the same. The motion was heard, overruled, and exceptions taken. Later defendant answered on the merits.

The defendant herein says the alias summons was insufficient to confer jurisdiction of the court over the person of the nonresident defendant. This the plaintiffs concede by failing to present any authorities, argument, or assertions to the contrary.

The plaintiffs present the jurisdictional questions on the theory that Armour & Company entered a general appearance in the case by filing a motion to quash and by reciting in its final motion to quash that leave of court had been obtained to file the same. With reference to recitation in the motion, plaintiffs say in their brief:

"This constitutes a general appearance under the Oklahoma decisions and does not constitute a special appearance. * * *"

And with general reference to motions to quash they say:

" . . . An appearance which moves to quash the summons for the reason that the same was not issued and served according to law does not raise any jurisdictional question, but constitutes a general appearance."

Neither of the positions taken is legally tenable. We shall treat the last first.

A special appearance and motion to quash when properly drafted does not in itself constitute an entry of appearance. We so stated in Welch v. Simmons, 190 Okla. 611, 126 P. 2d 89. See, also, Jones v. Norris, 176 Okla. 434, 55 P. 2d 984; Kansas, O. & G. Ry. Co. v. Martin, 175 Okla. 73, 51 P. 2d 577.

It may not be sufficiently comprehensive to present a particular question to the court for consideration, and the defendant may thereafter by answer or other pleadings enter a general appearance without having properly raised a meritorious question which could have been previously presented by a more comprehensive motion or pleading. Such was the substance of our holding in Ada-Konawa Bridge Co. v. Cargo, 163 Okla. 122, 21 P. 2d 1. We did not therein, as plaintiffs urge, hold that the inadequate special appearance in itself constituted a general appearance.

The plaintiffs do not present their

case to this court on the theory that the general appearance of the defendant occurred when its answer was filed, and that the previous special appearance and motion to quash was inadequate to raise the question of jurisdiction because it was not then and at the time of the presentation thereof supplemented by supporting proof to the effect that the defendant was not a domesticated foreign corporation, as plaintiffs alleged in their petition. Defendant established at a later point in the proceedings that it had withdrawn from the state in 1934. Plaintiffs do not complain that this proof was ineffective because untimely, and in their brief treat the defendant company as presenting its motion to quash as an undomesticated foreign corporation.

If this case were presented to us on the theory that by reason of the allegation of domestication in the petition defendant then stood before the court as a domesticated foreign corporation, and that the burden was then and there on the defendant to produce proof or otherwise assert and show that it was not domesticated in order to adequately preserve and perfect its challenge to the jurisdiction, an entirely different question would be presented for our consideration and a different result might be impelled. Notice Martin v. Fraternal Life Association, 80 Neb. 224, 114 N. W. 159; Welch v. Simmons, supra.

We have already pointed out that the filing of a special appearance and motion to quash does not constitute the entry of a general appearance. Plaintiffs' alternative theory that the request for leave to amend such a motion constitutes such an appearance is likewise untenable.

The leave to amend obtained by the defendant was strictly identified with its special appearance and challenge to the court's acquisition of jurisdiction through and by means of the alias summons served upon the Secretary of State. The leave asked and obtained did not contemplate any expansion of the purpose of the motion to comprehend nonjurisdictional matters.

On this point the remarks of the Federal Circuit Court of Appeals (2d Circuit) in Waters v. Central Trust Co. of New York, 126 Fed. 469, are particularly appropriate. It was therein stated:

"We are of the opinion that, under the circumstances, this taking of an extension of time to plead did not constitute a voluntary general appearance, such as would subject the defendant to the jurisdiction of the Ohio court . . .

"It is well settled that an application for an extension of time ordinarily amounts to a voluntary general appearance and a submission to the jurisdiction of the court, because the circumstances show a waiver of the right to question such jurisdiction. Brundage v. Biggs, 25 Ohio St. 652; Evans v. Iles, 7 Ohio St. 234; Hupfeld v. Automaton Co. (C. C.) 66 Fed. 788; Briggs v. Stroud (C. C.) 58 Fed. 717. But if the facts show that such application is made solely in order to preserve the right of a party to deny such jurisdiction, there is no reason to presume a waiver of such right or an intent to submit to such jurisdiction. 'It is an elementary principle of jurisprudence that a court of justice cannot acquire jurisdiction over the person of one who has no residence within its territorial jurisdiction except by actual service of notice within the jurisdiction upon him, or upon some one authorized to accept service in his behalf, or by his waiver, by general appearance or otherwise, of the want of due service.' Goldey v. Morning News, 156 U. S. 518, 521, 15 S. Ct. 559, 560, 39 L. Ed. 517. . . .

"Applying that principle to the present case, we think the application for extension of time to plead may fairly be interpreted as intended to be for an extension of time to appear for the purpose of pleading to the jurisdiction or otherwise."

The reasoning of the Circuit Court of Appeals is sound.

In filing the special appearance and motion to quash, counsel were appearing for the single and sole purpose of challenging the jurisdiction of the court over their person by reason of the al-

leged insufficiency of the issuance and service of summons. Such a challenge was within the legitimate field of a special appearance. Their recognition of the authority of the court to supervise proceedings in connection with such special appearance by asking leave to amend the motion in respect to a matter which did not involve nonjurisdictional questions did not constitute a general appearance. Consider Ex parte J. S. Cullinan, 224 Ala. 263, 139 So. 255, 81 A. L. R. 160; also, annotation 81 A. L. R. 169.

While due caution should be exercised not to go beyond the legitimate limits of a special appearance when challenging the jurisdiction of the court over the parties, it is not contemplated by the law that those limits shall be so strict and technical that counsel must maintain an attitude of antagonism and defiance in order to call the court's attention to defendant's rights in the matter.

We are of the opinion that the request for leave to amend as made and granted in this case was not intended to and did not constitute a general appearance.

No other question being presented in connection with the issue of jurisdiction over the person of the defendant corporation, the cause is remanded, with directions to set aside the judgment and dismiss the action.

GIBSON, V. C. J., and RILEY, BAYLESS, WELCH, and HURST, JJ., concur. CORN, C. J., concurs in conclusion. OSBORN and ARNOLD, JJ., absent.