HAWKINS et al. v. WHAYNE et al.

No. 32484. March 11, 1947.

Rehearing Denied April 8, 1947.

*179 P. 2d 138.*

Geo. W. Reed, Jr., of Tulsa, for plaintiffs in error.

W. B. Blair, of Tulsa, for defendants in error.

OSBORN, J. Plaintiffs, John R. Whayne, Bruce Mayfield, Ed Orman, W. C. Keene, and George Guthrie, brought two actions for injunction in the district court of Tulsa county. The first action was brought against defendant, Jack Hawkins, and sought to enjoin him from disposing of any lots in the Jack Hawkins addition to any persons of African descent. The second action No. 73726, was brought against the defendants, Flossie Pennington and others, to restrain them from erecting dwelling houses on property purchased by them in the Jack Hawkins addition, for the reason that they were persons of African descent. The ground upon which the relief sought by plaintiffs in each action was predicated was that because of certain restrictions theretofore agreed upon between the owner of the land embraced in the Jack Hawkins addition, and the owner of the land upon which the residences of plaintiffs had theretofore been erected, the sale of land in Jack Hawkins addition to persons of African descent, or the use of any portion of said addition for residence purposes by negroes, had been prohibited; that such restrictions upon the sale or the use of the land in the Jack Hawkins addition were in full force and effect; that the violation of such restrictions by the defendants, unless restrained, would irreparably injure the plaintiffs, and that they had no adequate remedy at law.

Temporary restraining orders were issued in each case, and thereupon defendants filed their answers, the causes were consolidated for the purpose of trial, and judgment rendered for the plaintiffs in each case, permanently enjoining the defendant in the first action from selling any part of that portion of the Jack Hawkins addition shown to have been included in the restrictive agreement above mentioned to persons of African descent, or negroes, and enjoining the defendants in the second action from asserting any right, title or interest in such part of the Jack Hawkins addition, and from erecting any dwellings thereon to be occupied by negroes. Defendants appeal.

Facts necessarily involved in the determination of the question presented by the appeal are that plaintiffs are residents and property owners in Devonshire Place addition to Tulsa; that the property in which Devonshire Place addition and Jack Hawkins addition are located lies north of the city of Tulsa and outside the city limits; that on or about April 13, 1929, the owner of the property on which Devonshire Place addition is located, and the owner of the property on which Jack Hawkins addition is located, and the owners of one or two other tracts of land adjoining the tracts above mentioned, all entered into a restrictive agreement or contract which provided, among other restrictions, that none of the properties or any part or parcel thereof should be sold to any person or persons of African descent, commonly known as negroes, which agreement was duly recorded in the records of Tulsa county; that on October 6, 1931, the same parties entered into a supplemental agreement which was recorded in the records of Tulsa

county, which contained a restrictive clause or provision identical with the one contained in the first agreement; that on May 17, 1941, the county treasurer of Tulsa county issued to one D. H. Boullt a resale tax deed covering the land embraced in the Jack Hawkins addition, and that Jack Hawkins is the owner and holder of the title vested in Boullt by said resale tax deed; that Hawkins has platted the land in said addition into lots and blocks, and has sold certain lots to the defendants in cause No. 73726, who are negroes, and is offering lots in said addition for sale and contracting for the sale thereof to other negroes. The evidence shows that a small portion of the land embraced in the Jack Hawkins addition was not covered by the restrictive agreements above referred to; that said addition is some four or five hundred feet east of the boundary of Devonshire Place addition, in which plaintiffs reside, and that other additions not covered by said restrictive agreements and settled by negroes are closer to Devonshire Place addition than the Jack Hawkins addition. The evidence also shows that because of the fact that the land covered by the Jack Hawkins addition is adjacent to additions settled by negroes upon the south and west, and that the Banfield Packing House slaughter pens lie to the north and west of said addition, there is practically no market for lots in said addition to white persons.

Defendants' first contention is that the tax sale whereby the land covered by the Jack Hawkins addition was sold to D. H. Boullt canceled the restrictive agreement sought to be enforced. They urge that by the tax sale a new title in fee simple vested in Boullt free and clear of all restrictions of any kind.

At the trial of the case plaintiffs introduced in evidence a deed in the chain of title to the land now covered by the Jack Hawkins addition which contained immediately after the covenants against encumbrances, the following:

"and except the restrictions as set forth and recorded."

Plaintiffs contend that because of this exception in the deed the restrictions on the land embraced in the Jack Hawkins addition survived by reason of the provisions of 68 O. S. 1941 § 456, which reads as follows:

"Whenever in any incorporated city or town, or addition or subdivision thereto or thereof a deed in the chain of title shall contain restrictions and covenants running with the land, as hereinafter defined and limited, said restrictions and covenants shall survive and be enforceable after the issuance of a resale or certificate tax deed, to the same extent that it would be enforceable against a voluntary grantee immediate, mediate, or remote, of the owner of the title immediately prior to the delivery of the aforesaid tax deed;"

Section 457 provides that the law shall apply to the usual restrictions and covenants limiting the use of property, the race or nationality of owners and the type, character and location of buildings thereon. Section 458 provides that all rights of the former owner to enforce such restrictions shall survive to the grantee in the tax deed, his heirs, successors or assigns.

Defendants urge that the statute should be given a strict construction, citing Test Oil Co. v. LaTourette, 19 Okla. 214, 91 P. 1025; Lyons v. Wallen, 191 Okla. 567, 133 P. 2d 555, and other cases holding that this court will not enlarge or extend restrictive covenants.

We think these cases are not applicable as a guide to the construction of the statute above quoted, but that the purpose of the statute being to save to both the owners of lots in a restricted addition, and the purchaser of lots in a restricted addition at a tax sale, the right to enforce such restrictions regardless of the tax sale, the statute must be given a liberal construction in order to effectuate that purpose.

While the statute, by its terms, embraces only restrictions contained in

deeds in the chain of title, it is obvious that the Legislature did not intend to exclude from the operation of the law additions or incorporated towns where restrictions were placed upon the land by plats and dedications or agreements by the property owners, and preserve only those which were specifically set forth in deeds. To so construe the statute would lead to absurd consequences, since restrictions contained in deeds and restrictions contained in plats and dedications or recorded agreements are of equal dignity and there would be no reason or justice in preserving the one and destroying the other.

In Rollins v. Heuman, 171 Okla. 435, 43 P. 2d 147, we said:

"Where the literal meaning of a statute would result in great inconvenience, or lead to absurd consequences which the Legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which will promote the ends of justice and avoid the absurdity."

And in Keck v. Oklahoma Tax Commission, 188 Okla. 257, 108 P. 2d 162, we said:

"Where the legislative intent is plainly discernible from the provisions of a statute when considered as a whole, the real purpose and intent of the legislative body will prevail over the literal import of the words employed."

To the same effect are In re Protest of Chicago, R. I. & P. Ry. Co., 137 Okla. 186, 279 P. 319; Brown v. State Election Board, 197 Okla. 169, 170 P. 2d 200; In re Benson, 178 Okla. 299, 62 P. 2d 962; Welch v. Simmons, 190 Okla. 611, 126 P. 2d 89.

When so construed we think the word "deed" in the statute was used as a generic term, and that thereby the Legislature intended to comprehend within the provisions of the statute restrictions placed upon the classes of property therein enumerated by any instrument of record in the county where such land was situate.

Furthermore, by the terms of the act such restrictions are referred to as restrictions and covenants running with the land, and it is settled that restrictions or covenants running with the land inhere in the land and bind subsequent purchasers thereof with the same force and effect as those set out at length in the conveyances of title to them. 15 C. J. 1259, § 81; 21 C. J. S. 941, § 83; 7 R. C. L. 1105, § 21; 14 Am. Jur. 495, § 19. The restrictive covenants were, therefore, by operation of law, carried forward into each conveyance of the property in the chain of title. They were "contained" in each deed.

The statute above quoted was enacted in 1937, prior to the time the tax title was acquired by the predecessor in title of defendants. It was a part of the statutes relating to the sale of land for taxes, and the acquisition thereof by purchasers at such sales, and must be construed together with the other provisions of said statutes so that all may be harmonized and effect given to each. Johnson v. City of Vinita, 172 Okla. 376, 45 P. 2d 1089. When so construed it placed a condition or limitation upon the tax title in the hands of the purchaser of such restricted lands at tax sale, and gave him the right to enforce restrictions which he otherwise would not have received.

Defendants do not contend that the above-quoted statute is inapplicable for the reason that the land involved lies outside of the corporate limits of the city, and we, therefore, do not pass upon that question.

Defendants next contend that plaintiffs did not come into court with clean hands because they had disregarded the restrictions by permitting houses to be built within the restricted area in violation of that portion of the restrictive agreement which designated the type and cost of houses which could be erected on the restricted lands. They also contend that plaintiffs abandoned the original agreement by entering into

a new agreement providing different restrictions.

From the evidence it appears that Devonshire Place addition was carved out of a portion of the restricted area, and that upon its dedication restrictions as to the type and cost of houses contained in the original agreement were modified, and that persons were permitted to build in the addition houses which did not conform to the original agreement. However, there was no modification or departure from the original agreement in so far as the restriction of the sale of the property to negroes was concerned, nor was any intent shown to supersede the original restrictive agreement by the restriction contained in the plat and dedication of Devonshire Place addition, except to the extent that the restrictions therein modified the original agreement. We do not think the evidence sufficient to sustain the contention that the restrictions in the original agreement as to the sale of property to negroes was either waived or abandoned, or that plaintiffs are now estopped to urge it. Vaughn v. Lyon, 122 Okla. 179, 252 P. 1088.

The trial court heard the evidence, and determined these contentions against defendants, and we think his judgment is not clearly against the weight of the evidence.

Defendants next contend that there had been such a material change of conditions since the making of the restrictive agreement in 1929 that plaintiffs are not entitled to enforce such agreement by injunction, for the reason that the granting of such relief under such changed conditions would be unjust and inequitable. They assert that the evidence shows that subsequent to the making of the 1929 agreement there has been a vast influx of negroes into areas adjacent to the restricted area, and that all of the property south of the restricted lands has been platted into additions for negroes and heavily settled by them; that such settlements have extended to a point immediately adjacent to the Jack Hawkins addition on the south, and that because of such large increase in the number of negro additions and homes in that area it is impossible to sell property in that vicinity to white persons.

From the evidence it appears that the property south of the resticted area has always been used to some extent as residential property available to the colored race, and that no restriction upon the sale of such property to negroes or its use by them for residential purposes has been enforced. The settlement of this property, however, with the exception of two small additions which appear to be located within the restricted area, which appear to be involved in actions similar to the case at bar, has all been outside of the property embraced in the restrictive agreement, and there is no evidence that plaintiffs, or other persons similarly situated in the restricted area, have done any act indicative of a purpose to relinquish or dispense with the restriction against the sale of land to negroes within the area embraced in the original agreement.

In Van Meter v. Manion, 170 Okla. 81, 38 P. 2d 557, we held that the mere fact that because of changed conditions in the adjacent territory the restricted land would sell for more money for other purposes did not signify that the purpose of the restrictions had been defeated, but that they would be enforced if shown to be of substantial value to the plaintiffs, although the result was injurious to defendants. We further said that those who had built their homes upon property purchased by them in the restricted area in reliance upon the restrictive covenants were entitled to protection against any invasion prohibited by the restrictions, regardless of encroachments near the restricted area, provided the original plan adopted in the restrictive agreement had not been departed from.

In Southwest Petroleum Co. v. Logan, 180 Okla. 477, 71 P. 2d 759, we said that the test of whether a change

in conditions would require the court to deny equitable relief was whether the original purpose and intention of the parties claiming the restriction had been so destroyed by the changed conditions, without fault on the part of those seeking relief, that the restrictions were no longer of substantial benefit to the residents of the restricted area, and the purpose in placing the restrictions upon the property could not be effected by the granting of an injunction.

We think the judgment of the trial court holding that there was not such a change of condition in the instant case as would justify the denial of equitable relief, was not clearly against the weight of the evidence. From the record it appears that the plaintiffs and other residents of Devonshire Place addition purchased lots and erected their residences thereon relying upon the restrictive agreement to prevent the encroachment of the colored race upon the addition, and that the settlement of the Jack Hawkins addition by negroes would greatly lessen the desirability of Devonshire Place addition as a residential section for whites. One witness testified that it would ruin the addition if the Jack Hawkins addition were settled by negroes.

Under such circumstances, we think the residents of Devonshire Place addition are entitled to protection by having the restrictive covenants enforced, even though another portion of the restricted area may be injured or its value reduced by the enforcement of the restrictions. Southwest Petroleum Co. v. Logan, supra; Van Meter v. Manion, supra.

In their last contention defendants assert that the restriction violates both the State and Federal Constitutions in that it is a discrimination against the negro race, and that it also violates 60 O. S. 1941 § 175.47, which provides that the absolute power of alienation shall not be suspended by any limitation or condition for a period longer than the duration of the life or lives in being and 21 years thereafter.

In Lyons v. Wallen, supra, and again in Hemsley v. Sage, 194 Okla. 669, 154 P. 2d 577, we held that such restrictions imposed by private agreement did not violate either the State or Federal Constitutions, and were not contrary to public policy.

Nor is the agreement involved in the instant case violative of 60 O. S. 1941 § 175.47. It does not suspend or limit the absolute power of alienation but simply restricts in a reasonable manner the unrestrained power of alienation of the lands covered thereby. The authorities are in conflict as to whether such a restraint is valid or invalid. 66 A. L. R. 531, note. But we think the better reasoned authoriteis uphold the validity of such a restriction as not being an unreasonable restraint upon the power of alienation. Torrey v. Wolfes, 6 Fed. 2d 702; Russell v. Wallace, 30 Fed. 2d 981; Chandler v. Ziegler, 88 Colo. 1, 291 P. 822. In the last-cited case the court said:

"'. . . The owner of property has a right to dispose of it with a limited restriction on its use, however much the restriction may affect the value or the nature of the estate. Repugnant conditions are those which tend to the utter subversion of the estate, such as prohibit entirely the alienation or use of the property. Conditions which prohibit its alienation to particular persons or for a limited period, or its subjection to particular uses, are not subversive of the estate; they do not destroy or limit its alienable or inheritable character.'"

We conclude that the restriction is not violative of either the State or Federal Constitutions, and is not prohibited by the statute above referred to.

Affirmed.

HURST, C.J., and RILEY, BAYLESS, WELCH, CORN, GIBSON, and ARNOLD, JJ., concur.