2004 OK 12

**STATE of Oklahoma, Plaintiff/Appellee,**

v.

**Pablo TORRES, Defendant,**

and

**Ranger Insurance Company, Intervenor/Appellant.**

**No. 96,996.**

Supreme Court of Oklahoma.

Feb. 24, 2004.

---

J. Ted Bonham and Jeffrey D. Black, Bonham, Swank, Coe & Black, Oklahoma City, OK, for Appellant/Intervenor.

Fred Morgan, Assistant District Attorney for Tulsa County, Tulsa, OK, for Plaintiff/Appellee, the State of Oklahoma.[2]

OPALA, V.C.J.

¶ 1 The dispositive issues tendered on certiorari are: (1) Is appellant entitled to corrective relief from a bond forfeiture on grounds arising out of postjudgment events? and (2) Is there competent evidence in the appellate record to demonstrate that the trial court abused its discretion when it denied

2. Identified herein are those counsel whose names appear on the appeal and certiorari briefs.

3. *See* the provisions of 59 O.S. Supp.2000 § 1332(A), which state:
"If there is a breach of an undertaking, the court before which the cause is pending shall issue an arrest warrant for the defendant and declare the undertaking and any money, property, or securities that have been deposited as bail, forfeited on the day the defendant failed to appear. In the event of the forfeiture of a bail bond the clerk of the trial court shall, within thirty (30) days after the forfeiture, by mail with return receipt requested, mail a true and correct copy of the order and judgment of forfeiture to the bondsman, and if applicable, the insurer, whose risk it is, and keep at least one copy of the order and judgment of forfeiture on file; provided, the clerk shall not be required to mail the order and judgment of forfeiture to the bondsman or insurer if, within fifteen (15) days from the date of forfeiture, the defendant is returned to custody, the bond is reinstated by the court with the bondsman's approval, or the order of forfeiture is vacated or set aside by the court."

4. The provisions of 59 O.S.2001 § 1332(D)(1) stipulate when a bond forfeiture must be paid. That section states:
"If, within ninety (90) days from receipt of the order and judgment of forfeiture from the

relief from the bond forfeiture? We answer both questions in the negative.

**I**

**ANATOMY OF LITIGATION**

¶ 2 On 11 September 2000 Pablo Torres (defendant) was charged in the District Court, Tulsa County, with the crime of rape by instrumentation. Thomas Bouldin, a licensed bondsman (bondsman), and Ranger Insurance Company (appellant), a corporate surety, executed a $50,000.00 bail bond to secure defendant's appearance. Defendant failed to appear for trial on 7 March 2001 and the trial court entered an order and judgment of bond forfeiture. The statutory notice of forfeiture was mailed within the time prescribed by statute.[3] The bond forfeiture obligation came due on 21 June 2001.[4]

¶ 3 Without having paid the forfeiture judgment and while defendant remained at large, bondsman moved on 27 August 2001 to set the forfeiture aside,[5] arguing that a lack of diligence on the part of the Tulsa County District Attorney's office had prevented him from returning defendant to custody.[6]

court clerk, or mailing of the notice if no receipt is made, the defendant is not returned to custody, or the forfeiture has not been stayed, the bondsman and if applicable, the insurer whose risk it is, shall deposit cash or other valuable securities in the face amount of the bond with the court clerk ninety-one (91) days from receipt of the order and judgment of forfeiture from the court clerk, or mailing of the notice if no receipt is made; . . ."

5. Although the bondsman's motion was captioned "Motion for Stay of Payment of Bond Forfeiture and Request for Hearing," it is clear from the prayer for relief that the motion's objective was to have the bond forfeiture set aside and not simply to obtain a stay. The motion's quest for a stay was limited to the period between the motion's filing and the date on which the motion would be heard. The legal effect of any court-filed paper—be it a motion, a pleading or some other instrument—is to be measured by its content rather than by the author-provided title. *Ginn v. Knight*, 1924 OK 806, ¶ 4, 232 P. 936, 937; *Amarex, Inc. v. Baker*, 1982 OK 155, ¶ 18, 655 P.2d 1040,1043; *Horizons, Inc. v. Keo Leasing Co.*, 1984 OK 24, ¶ 4, 681 P.2d 757, 759; *Estate of Estes*, 1999 OK 59, ¶ 24, 983 P.2d 438, 444.

6. Bondsman suggested that state prosecutors' lack of diligence was motivated by a desire to both collect on the bond forfeiture and obtain

Bondsman made the following allegations: (1) he had traced defendant to a city in Mexico, (2) he was told that to obtain the assistance of the Mexican government in apprehending defendant, U.S. officials in Mexico would have to receive an Unlawful Flight to Avoid Prosecution (UFAP) warrant for defendant's arrest,[7] (3) he received instructions from both state and federal prosecutors on the correct procedure for requesting a UFAP warrant, (4) as instructed, he sent to the Tulsa County District Attorney's office a letter dated 24 April 2001, asking state prosecutors to request a UFAP warrant for defendant's arrest from the United States Attorney's office, and (5) prosecutors in the Tulsa County District Attorney's office did not act on bondsman's request until 10 August 2001, well after the expiration of the ninety-day period in which a bondsman can return a defendant to custody and obtain statute-authorized vacation of a bond forfeiture.[8]

¶4 A hearing on the motion to set aside the bond forfeiture was held on 14 September 2001. The motion was denied and the trial court ordered that the penalty on the bond be paid by the close of that day's business.

¶5 Appellant appealed, arguing that in refusing to vacate the bond forfeiture the trial judge abused the discretion granted him by the provisions of 59 O.S.2001

§ 1332(C)(5)(b).[9] The Court of Civil Appeals, Division No. 3 (COCA), disagreed and affirmed the trial court's order. Appellant then moved for rehearing, requesting not only a reexamination of the trial court's exercise of discretion, but also *for the first time seeking review of the trial court's order in light of the provisions of 59 O.S.2001 § 1327(C)*, which call for the undertaking and sureties to be exonerated of further liability when the criminal proceeding is brought to a conclusion by the defendant's appearance, plea, and sentencing.[10] The rehearing petition was denied and appellant sought certiorari. Although, like the COCA, we affirm today the trial court's ruling, we *granted certiorari to provide, inter alia, guidance on an important point of procedure for securing exoneration where midappeal events give rise to a theory of relief not earlier available at nisi prius.* We hence vacate the appellate court's opinion and affirm the trial court's order and judgment of forfeiture.

## II

**APPELLANT'S QUEST FOR CORRECTIVE RELIEF PURSUANT TO THE PROVISIONS OF 59 O.S.2001 § 1327(C) IS NOT SUPPORTED BY THE RECORD SUBMITTED FOR APPELLATE REVIEW**

¶6 The provisions of 59 O.S.2001 § 1327(C) state that a bond forfeiture *shall*

---

custody of defendant. This could be accomplished by using the information developed by bondsman on defendant's whereabouts while at the same time delaying action on bondsman's request for assistance with the UFAP warrant until the statutory period for returning defendant to custody and obtaining the routine vacation of the forfeiture order had expired.

7. The provisions of 18 U.S.C. § 1073, authorize the issuance of a federal warrant, which permits federal law enforcement agents to apprehend state fugitives, release them to local authorities in the state of arrest, and allow extradition to the state in which the federal offense [unlawful flight] was committed. *United States v. Love*, 425 F.Supp. 1248, 1250 (S.D.N.Y.1977).

8. The provisions of 59 O.S.2001 § 1332(C) state: "1. The bail bondsman shall have ninety (90) days from receipt of the order and judgment of forfeiture from the court clerk or mailing of the notice if no receipt is made, to return the defendant to custody.

2. When the court record indicates that the defendant is returned to custody in the jurisdiction where forfeiture occurred, within the ninety-day period, the court clerk shall enter minutes vacating the forfeiture and exonerating the bond. If the defendant has been timely returned to custody, but this fact is not reflected by the court record, the court shall vacate the forfeiture and exonerate the bond."

9. The provisions of 59 O.S.2001 § 1332(C)(5)(b) give discretionary authority to the trial court to vacate a bond forfeiture where good cause is shown for the bondsman's inability timely to return defendant to custody. For the provisions of § 1332(C)(5)(b), *see infra* note 25.

10. The provisions of 59 O.S.2001 § 1327(C) state that the bond, the bondsman, and the insurer shall be exonerated of further liability when a defendant appears before the court and disposition of the case is made. For the terms of § 1327(C), *see infra* note 11.

be set aside when a defendant appears before the court and enters a plea, is sentenced, or is granted a deferred sentence.[11] After the COCA denied appellant the corrective relief it sought, *appellant moved for rehearing and for the first time raised § 1327(C) as a ground for reversal of the trial court's order.* In support of the rehearing petition, appellant filed an amended designation of record and attached to its rehearing plea a copy of the updated appearance docket from defendant's criminal case. *The COCA struck the attempted amendment of the record and denied rehearing.* According to the rejected documentation, defendant Torres was returned to the custody of Tulsa County authorities during the pendency of the appeal herein, pled guilty, and was sentenced. Appellant now seeks on certiorari to have this court apply § 1327(C) based on the midappeal events described in appellant's failed supplementation of the appellate record.

¶ 7 Appellant's invocation of the provisions of § 1327(C) raises an issue of public law that relates to the exoneration of appearance bonds. We granted certiorari to clarify, among other things, why we cannot address that issue. When a dispute presents a public-law controversy, we are *generally* free to grant corrective relief upon any applicable legal theory dispositive of the case *and supported by the record.*[12] While under the more relaxed regime for appellate review of public-law disputes we are free to disregard *sua sponte* deficiencies in the theories pressed, we may not do the same for deficiencies in the record.[13] Record support remains *absolutely essential.* We *are unable to address issues clearly outside the record.*[14]

¶ 8 The trial court never had an opportunity to consider in this case whether appellant is entitled to relief under § 1327(C). The events making that statute arguably applicable had not yet taken place when the *nisi prius* court issued its order here on review. Appellant would now like to bypass the normal fact-finding procedure and present evidence directly to this court. To this aberration we cannot accede.[15] *Our re-*

---

11. The provisions of 59 O.S.2001 § 1327(C) state:

"When a defendant does appear before the court as required by law and enters a plea, is sentenced or a deferred sentence is granted as provided for in Section 991c of Title 22 of the Oklahoma Statutes, in such event the undertaking and bondsman and insurer shall be exonerated from further liability."

12. *Russell v. Board of County Comm'rs,* 1997 OK 80, ¶ 10, 952 P.2d 492, 497; *Jackson v. Okla. Memorial Hosp.,* 1995 OK 112, ¶ 5, 909 P.2d 765, 768; *North Side State Bank v. Board of County Comm'rs of Tulsa County,* 1994 OK 34, ¶ 10, n. 8, 894 P.2d 1046,1050, n. 8; *Simpson v. Dixon,* 1993 OK 71, ¶ 26, 853 P.2d 176, 187; *First Fed. Sav. and Loan Ass'n v. Nath,* 1992 OK 129, ¶ 11, n. 35, 839 P.2d 1336,1343, n. 35; *Matter of McNeely,* 1987 OK 19, ¶ 4, 734 P.2d 1294,1296; *Burdick v. Independent School Dist.,* 1985 OK 49, ¶ 10, n. 10, 702 P.2d 48, 54, n. 10; *McCracken v. City of Lawton,* 1982 OK 63, ¶ 9, n. 11, 648 P.2d 18, 21, n. 11.

13. *Davis v. GHS Health Maintenance Org., Inc.,* 2001 OK 3, ¶ 25, 22 P.3d 1204, 1212; *Matter of McNeely,* 1987 OK 19, ¶ 4, 734 P.2d 1294, 1296.

14. *Schulte Oil Co., Inc. v. Okla. Tax Comm'n,* 1994 OK 103, ¶ 7, n. 8, 882 P.2d 65, 69 n. 8. A well-recognized exception allows an appellate tribunal to consider those after-occurring facts, transpiring during the pendency of an appeal, which adversely affect the reviewing court's cognizance or its capacity to administer effective relief. *City of Tulsa v. Chamblee,* 1940 OK 431, ¶ 11, 106 P.2d 796, 797; *Northeast Okla. Elec. Cooperative, Inc. v. State ex rel. Corp. Comm'n,* 1991 OK 28, ¶ 7, n. 6, 808 P.2d 680, 683, n. 6; *Lawrence v. Cleveland County Home Loan Auth.,* 1981 OK 28, ¶ 6, 626 P.2d 314, 315; *Baird v. Independent Sch. Dist. No. 3 of Woodward County,* 1981 OK 1, ¶ 3, n. 4, 622 P.2d 1072, 1074, n. 4. *This case does not fall within this narrow exception.*

15. Just as it is not the function of this court to make an initial determination of fact or legal questions which have been properly presented to the trial court but left unresolved, so too is an appellate court unable to make first-instance rulings on issues of fact or law which have been neither raised nor assessed at *nisi prius.* See *Evers v. FSF Overlake Associates,* 2003 OK 53, ¶ 18, 77 P.3d 581, 587; *Salazar v. City of Okla. City,* 1999 OK 20, ¶ 15, 976 P.2d 1056, 1062; *Bivins v. State of Okla. ex rel. Okla. Memorial Hosp.,* 1996 OK 5, ¶ 19, 917 P.2d 456, 464; *Dyke v. St. Francis Hosp., Inc.,* 1993 OK 114, ¶ 11, 861 P.2d 295, 300; *American Ins. Ass'n v. Indus. Comm'n,* 1987 OK 107, ¶ 7 n. 15, 745 P.2d 737, 740 n. 15; *Sandpiper North Apts. v. American Nat. Bank,* 1984 OK 13, ¶ 29, 680 P.2d 983, 993; *Estate of Bartlett,* 1984 OK 9, ¶ 19 n. 13, 680 P.2d 369, 377 n. 13; *Davis v. Gwaltney,* 1955 OK 362, ¶ 13, 291 P.2d 820, 824.

*view must stand confined to that record which was made before the nisi prius court at the time of its decision now under scrutiny.*[16] Our cognizance of this case cannot be affected by midappeal proceedings before the trial court in defendant's criminal case. The fact that post-decisional events may arguably provide a basis for invoking a legal theory that was not available when the decision under review was issued simply is not grounds for supplementation of the appellate record before the COCA.

¶ 9 The remedy to be pursued under these circumstances was for appellant to seek in the trial court postjudgment relief affordable by multiple statutory proceedings.[17] Had appellant chosen the correct course, we in all likelihood would have agreed to a stay of appellate proceedings pending the trial court's ruling.[18] If appellant had met with an adverse ruling from the trial court, it could have appealed from that ruling and moved here to consolidate the two related appeals.[19] Instead, appellant *chose* for the

corrective relief it seeks here *a fatally flawed procedural course.*[20]

## III

## STANDARD OF REVIEW

¶ 10 The sole contention tendered by appellant which is reviewable on certiorari is whether the trial court abused its discretion in denying bondsman's motion to set aside the bond forfeiture. The decision whether to vacate a bond forfeiture is reviewable by the standard of reasonable discretion. It will not be disturbed absent an abuse of discretion.[21] We have characterized the abuse-of-discretion standard by a variety of similar expressions. We have said that discretion is abused when a trial court makes a clearly erroneous conclusion and judgment contrary to reason and evidence,[22] when it exercises its discretion to an end or purpose not justified by, and clearly contrary to, rea-

---

16. A party may not supplement the appellate record by introducing into it material that was not before the trial court when the judgment or order under review was issued. *Frey v. Independence Fire and Cas. Co.,* 1985 OK 25, ¶ 7, 698 P.2d 17, 20 ("[T]here can be no post-decisional amendment of the record to include material that was not timely admitted or properly pressed for incorporation at the trial level."); *Dolese Bros. v. State ex rel. Okla. Tax Comm'n,* 2003 OK 4, ¶ 38, 64 P.3d 1093, 1107 ("A deficient record may not be supplemented by material physically attached to a party's appellate brief.); *Eckel v. Adair,* 1984 OK 86, ¶ 9, 698 P.2d 921, 925; *Hart v. McVay,* 1992 OK 47, ¶ 14, 832 P.2d 822, 825; *City of Lawton v. International Union of Police Ass'ns,* Local 24, 2002 OK 1, ¶ 7, n. 16, 41 P.3d 371, 375, n. 16; *Chamberlin v. Chamberlin,* 1986 OK 30, ¶ 4, 720 P.2d 721, 723. *See also* Rule 1.28(b), Oklahoma Supreme Court Rules, 2001 O.S., App. 1., which states in pertinent part: "Materials which were not before the trial court at the time of the decision appealed are not properly part of the record on appeal without order of the trial court or the appellate court...."

17. *See* in this connection the postjudgment proceedings invocable under the provisions of 12 O.S.2001 § 1031, 12 O.S.2001 § 1031.1, and 12 O.S.2001 §§ 651–655. To the extent that they are not time-barred, these postjudgment remedies are still available for post-mandate pursuit.

18. *Southeastern, Inc. v. Doty,* 1971 OK 17, ¶ 16, 481 P.2d 144, 147.

19. The pertinent provisions of Rule 1.27(d), Oklahoma Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1, give the appellate court the discretion sua sponte, or upon motion of a party, to consider any appeals as companion or consolidated appeals. *See Allen v. Lynn Hickey Dodge, Inc.,* 2001 OK 93, ¶ 3, n. 7, 39 P.3d 781, 786, n. 7 (Opala, J. concurring).

20. In its first note the dissent points out the mandatory language in § 1327(C)—that the undertaking, bondsman, and insurer "shall" be exonerated upon the happening of certain events. If by this comment the dissent intends to imply that were it not for the procedural impediment that prevents consideration of the merits of appellant's § 1327(C) argument, a decision for appellant would be likely, we reject that notion. This is not the proper case in which to construe the scope of § 1327(C), but we are compelled by the dissent's comment to say that we have serious doubt that § 1327(C) is invocable in a proceeding for vacation of a forfeiture order and judgment. The latter is a species of obligation distinct from an undertaking.

21. *State v. Vaughn,* 2000 OK 63, ¶ 21, 11 P.3d 211, 216.

22. *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, ¶ 32, 932 P.2d 1091, 1097; *Broadwater v. Courtney,* 1991 OK 39, ¶ 7, 809 P.2d 1310, 1312.

son and evidence,[23] and when discretion is employed on untenable grounds or for untenable reasons, or where its exercise is manifestly unreasonable.[24]

## IV

## APPELLANT FAILED TO INTRODUCE COMPETENT EVIDENCE AT THE TIME OF *NISI PRIUS* HEARING THAT IT WAS ENTITLED TO HAVE THE BOND FORFEITURE SET ASIDE; THERE IS HENCE NOTHING IN THE APPELLATE RECORD FROM WHICH THIS COURT CAN DETERMINE THAT THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT THE RELIEF IT SOUGHT

¶ 11 The provisions of 59 O.S.2001 § 1332(C)(5)(b) invest the trial court with discretion to vacate a bond forfeiture where a bondsman demonstrates good cause for failing to return a defendant to custody.[25] The burden to show facts warranting relief from a bail bond forfeiture rests on the party seeking such relief.[26] Although the bondsman's motion presents in this case a facially plausible argument for § 1332(C)(5)(b) relief, the appellate record *is utterly devoid of competent evidence* of either the bondsman's efforts to locate and return the defendant to custody or of the state's actions that were alleged to have hindered bondsman's efforts.

¶ 12 At the hearing on bondsman's motion, appellant's counsel *provided for the nisi prius court a running narration of the facts* supportive of the relief requested, *but offered neither sworn testimony nor other evidence having probative value. Counsel's in-court description of the efforts made by bondsman to gain custody of defendant and of the conduct of the district attorney's office that allegedly hindered those efforts cannot serve as a substitute for legal proof.*

¶ 13 Appellant designated for inclusion in the appellate record certain documents from the court file in defendant's criminal case. *Again, none of these documents was introduced into evidence.*[27] No request was made by appellant for the trial court to take judicial notice of any of these documents and the trial judge did not indicate that he was taking judicial notice of any of them.[28] As for this court, we cannot notice material which, though arguably available for notice by the trial court and designated for incorporation into the record on appeal, did not function below as proof of critical allegations. Moreover, to the extent that the court file's contents contain statements which pertain to matters in dispute, or which constitute hearsay, or which would otherwise be inadmissible in evidence, they would not have been proper subjects for judicial notice had appellant requested that the trial court take that action.[29]

23. *Patel v. OMH Medical Center, Inc.* 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194; *In re Stackman*, 1963 OK 264, ¶ 29, 388 P.2d 305, 311.

24. *Patel, supra* note 23. *Accord, State ex rel. Campbell v. Cook*, 86 Wash.App. 761, 938 P.2d 345 (1997).

25. The provisions of 59 O.S.2001 § 1332(C)(5) are:

"The court may, in its discretion, vacate the order of forfeiture and exonerate the bond where good cause has been shown for:
a. the defendant's failure to appear, or
b. the bondsman's failure to return the defendant to custody within ninety (90) days."

26. *Vaughn, supra* note 21, ¶ 23, at 216.

27. *State ex rel. Dept. of Human Services v. Baggett*, 1999 OK 68, ¶ 12, 990 P.2d 235, 240 ("Before a judge may validly decide an issue of fact,

his decision, like that of a jury, must be based on competent evidence received during a hearing, or on facts stipulated by the parties.").

28. A trial court may take judicial notice of any proceedings conducted in the same forum, but an appellate court may only take judicial notice of that which is a part of the record on appeal. *Eckel, supra* note 16 at ¶¶ 5–6, at 923–24. For the proper procedure in preparing an appellate record to include recorded material incorporated by reference in a pleading, see *id.* at ¶ 5, n. 9, at 924, n. 9.

29. Judicial notice—the court's cognizance of adjudicative facts without formal proof—is part of our evidence law. *See Oklahoma Evidence Code*, §§ 12 O.S.2001 §§ 2202 and 2203. Adjudicative facts are simply the facts of the particular case. *Otherwise inadmissible documents do not automatically become admissible just because they are included in a judicially noticed court file. See e.g.*

¶ 14 By force of law a presumption of correctness attaches to every ruling made by a trial court.[30] The burden of overcoming that presumption rests on the appellant,[31] who in this case has utterly failed to provide a record to show that the trial court's presumptively correct decision is wrong. Instead the record reveals only that appellant neglected to adduce *proof* of any of the critical facts that would support a reversal of the adverse ruling. The presence of potentially relevant documents in the court clerk's file does not relieve counsel from identifying and offering them as proof in the proceedings on the merits.[32] Though designated for inclusion in the record for appeal, none of these documents has any probative value in support of those allegations that are critical to overcoming the presumption of correctness.

¶ 15 Even if we were to treat the documents included in the appellate record as effective evidence, we could not hold that the trial court abused its discretion in concluding that appellant failed to meet the requisite burden of proof. The *official documents* in the appellate record include the document charging defendant with a crime, defendant's appearance bond, the order and judgment of bond forfeiture, the bondsman's guarantee to pay reasonable transportation costs,[33] a bench warrant for defendant's arrest, and a copy of the notice to the Oklahoma Insurance Commissioner of the bondsman's non-payment of bond forfeiture. None of these documents addresses the reasons appellant could not timely return defendant to custody nor do they deal with the actions of the district attorney's office in response to the bondsman's request for assistance with the federal warrant.

¶ 16 In addition to the official documents, the court file also contains copies of two letters. One letter, dated 30 April 2001, purports to be from the aunt of defendant's wife and is addressed to the bondsman. In it the aunt states that she has spoken by telephone to the defendant in Mexico. At best, this letter might be regarded as showing that sometime after the date the letter was written, the bondsman received information (of unknown reliability) that defendant was residing in a certain Mexican city. It does not provide evidence relating to the bondsman's efforts to return the defendant to custody nor of the district attorney's lack of cooperation in facilitating those efforts.

¶ 17 The other letter purports to be from the bondsman to the Tulsa County District Attorney. It is dated 24 April 2001. In it the author asks the state prosecutor to request a federal warrant for defendant's arrest. This letter is the only documentation in the appellate record of the bondsman's efforts to garner the assistance of the district attorney's office. Even if this letter had been properly offered and admitted into evidence, it would not have been sufficient to persuade us that the trial court erred in its assessment of the proof.

*Burgess v. State*, 831 So.2d 137 (Fla.2002); *State v. Kotis*, 91 Hawai'i 319, 984 P.2d 78 (1999).

**30.** *U.S. Mortgage v. Laubach*, 2003 OK 67, ¶ 30, 73 P.3d 887, 900. On review, we must always indulge in the presumption that a trial court's decision is correct; every fact not disputed by the record must be regarded as supportive of the trial court's decision. *Cox v. Warford*, 1912 OK 540, ¶ 1, 126 P. 1026, 1027; *Okla. Turnpike Auth. v. New Life Pentecostal Church of Jenks*, 1994 OK 9, ¶ 15 n. 24, 870 P.2d 762, 768 n. 24; *KMC Leasing Inc. v. Rockwell Standard Corp.*, 2000 OK 51, ¶ 13, 9 P.3d 683, 688.

**31.** An appellant bears total responsibility for including in the appellate record all materials necessary for corrective relief. *Hulsey v. Mid-America Preferred Ins. Co.*, 1989 OK 107, ¶ 7, 777 P.2d 932, 936; *Hamid v. Sew Original*, 1982 OK 46, ¶ 7, 645 P.2d 496, 497.

**32.** In order to form a part of the evidentiary record to be reviewed, demonstrative evidence must be marked for identification or authentication, identified or authenticated, offered into evidence, and either admitted or rejected. Rejected material must be re-tendered by proffer on the record to preserve for review error in its exclusion. *Estate of Whitlock*, 1988 OK 10, ¶ 1, 754 P.2d 862, 862–63; *Dixon Property Co. v. Shaw*, 1999 OK 96, ¶ 7, 2 P.3d 330, 332.

**33.** This document, dated 22 March 2001, states that the bondsman has "requested the Sheriff of Tulsa County to teletype a warrant to an out of state agency in regard to" the defendant in this case. This document suggests that the bondsman knew where the defendant was at this time, but that conclusion would be unwarranted in light of other items in the designated record that suggest the bondsman did not know exactly where the defendant was until sometime later.

¶ 18 In short, the State of Oklahoma has a judicially decreed right to the proceeds of the bond forfeiture at issue. Appellant, who asserts that it has a statute-based defense to the state's demand for enforcement of that order, has the burden of showing that the occurrence of certain events has created an infirmity in the state's adjudicated claim. *Appellant offered tantalizing suggestions regarding the existence of facts critical to its case, but failed to prove those facts by admissible proof.* It would have been a simple matter to have done so. *It is elementary that evidence must be offered and admitted at a hearing in which fact issues are in dispute.* In sum, that which counsel desires to use as proof must be adduced in a proper manner in the adversarial proceedings conducted to resolve the disputed facts on the merits of a claim or defense.[34] Appellant's failure to adduce for the record any proof of facts critical to its defense against the state's demand is fatal to its cause.

## V

## THE COURT'S RESPONSE TO THE DISSENT'S CRITIQUE

¶ 19 The dissent would have us hold today that the discretion given a trial court to vacate a forfeiture order is abused and good cause for vacation is shown within the meaning of § 1332(C)(5)(b) where (1) a bondsman takes all legal steps to return a defendant to custody and (2) the trial court makes inappropriate suggestions during a hearing that the bondsman could have resorted to illegal methods to obtain defendant's return. While we join with the dissent in disapproving of the trial judge's comments about bribing Mexican officials, we disagree that his comments signaled that the use of illegal means was the *only* way appellant could have demonstrated good cause. Moreover, even if his inappropriate comments had given this impression, they could not turn what is otherwise an insufficient showing of good cause for the forfeiture's vacation into a sufficient one.

¶ 20 The bondsman's role in the appearance bond process is to provide security for the appearance of the defendant as ordered by the court.[35] When a defendant fails to appear as ordered, the Oklahoma statutes authorize the court to declare a forfeiture of the appearance bond.[36] The bondsman is then given a ninety-day grace period in which he or she can return the defendant to custody and obtain vacation of the forfeiture as a matter of course.[37] After the ninety-day grace period has expired, the trial court retains *discretion* to vacate the bond forfeiture under the provisions of § 1332(C)(5). Prior to 1995, that discretion extended only to a showing of good cause *for the defendant's failure to appear.*[38] In 1995 the statute was amended to give the trial court discretion to vacate a forfeiture where the bondsman presents evidence demonstrating good cause *for his or her failure to return the defendant to custody within ninety days.*[39] As is true of any exercise of judicial discretion, the trial court in deciding whether good cause has been shown within the meaning of 1332(C)(5) must not act arbitrarily or unreasonably.[40]

¶ 21 The court's first opportunity to construe the parameters of the discretion conferred upon the trial court by the 1995 amendment to § 1332(C)(5) came in *State v.*

**34.** *See Estate of Whitlock, supra* note 32.

**35.** *Gibson v. State,* 1982 OK 151, ¶ 5, 655 P.2d 1028, 1029.

**36.** *See supra* note 3 for the provisions of the forfeiture statute.

**37.** *See supra* note 8 for the provisions of 59 O.S.2001 § 1332(C)(1) and (2), which set forth the circumstances under which either the court clerk or the court *shall* vacate a bond forfeiture and exonerate the sureties of their obligation on the bond.

**38.** Prior to § 1332(C)'s amendment in 1995, the trial court's discretion to vacate a bond forfeiture was not conferred by a single statute, but by the court's construction of several statutes in *pari materia*. *In State v. Fish,* 1987 OK 128, ¶¶ 4–6, 747 P.2d 956, 957–59, *superseded by statute*, we construed 22 O.S.1981 § 1108(A) and 59 O.S. Supp.1984 §§ 1330 and 1332 to give the trial court discretion to set aside a bond forfeiture where good cause is shown for the defendant's failure to appear.

**39.** *Laws* 1995, c. 357 § 5, eff. Nov. 1, 1995.

**40.** *Patel, supra* note 23 at ¶ 20, at 1194 and cases cited therein.

*Vaughn,*[41] in which we outlined some of the factors a trial court should consider in determining whether good cause has been shown. The factors we specifically urged to be considered are:

(a) whether the defendant has been returned to custody and, if so, whether the bondsman's efforts assisted in the defendant's return;

(b) the nature and extent of the bondsman's efforts to locate and return the defendant to custody;

(c) the length of the delay caused by the defendant's non-appearance;

(d) the cost and inconvenience to the government in regaining custody of the defendant;

(e) the stage of the proceedings at the time of defendant's non-appearance; and

(f) the public interest and necessity of effectuating defendant's appearance.

We said in *Vaughn* that this list is illustrative and not exhaustive, that no single factor alone is determinative, and that the relative importance of each factor is for the trial judge to determine inasmuch as it may vary from case to case.[42] In applying these factors, it must always be borne in mind that the burden of showing facts warranting relief from forfeiture is on the party seeking such relief.[43]

¶ 22 In *Vaughn,* the evidence established that the bondsman had hired bounty hunters who conducted searches in three states and that the bondsman had expended approximately $50,000.00 trying to locate the defendant. The bondsman *argued that this evidence established that he had exercised due diligence and that a showing of due diligence*

*was sufficient* to satisfy the good cause requirement of § 1332(C)(5)(b). We rejected that argument, instead analyzing the evidence in light of all the factors outlined earlier in that opinion.[44] *We pointed out that extant jurisprudence imposes on an appellate court an obligation to accord substantial deference to a trial court's exercise of discretion and to reverse only if the trial court's decision is clearly contrary to reason and evidence.*[45] Applying this standard, we concluded that the trial court did not abuse its discretion in refusing to vacate the forfeiture order in *Vaughn.*

¶ 23 *The dissenting members of the court* would have us reverse the trial court's order based on what they consider sufficient credible evidence of *one* of the factors prescribed by *Vaughn*—that the bondsman exhausted all legal steps to locate and return the defendant to custody. We said in *Vaughn* that no single factor alone should be determinative. That principle clearly guided our decision in *Vaughn,* in which we held that efforts alone, even when substantial and costly, are not sufficient to justify reversal of the trial court's decision. The dissenters disapprove of the nature and scope of the proof we prescribed in *Vaughn* as necessary to establish good cause under the provisions of § 1332(C)(5)(b) and would have us use the present case to overrule our earlier decision. We decline to do so and hence remain committed to and bound by the requirements for relief under § 1332(C)(5)(b) as pronounced in *Vaughn.*

¶ 24 Piecing together the documents in the court file[46] and the statements, admissions, and comments given evidentiary status by

---

41. *Supra* note 21.

42. *Id.* at ¶ 22, at 216.

43. *Id.* at ¶ 23, at 216.

44. We noted that there was evidence tending to support relief from the forfeiture order, including the bondsman's significant efforts to locate the defendant, the fact that the proceedings were at an early stage when the defendant fled, and the fact that the defendant had been returned to custody by the time of the evidentiary hearing on the bondsman's motion to vacate. We also identified the evidence tending to militate against

vacating the order of forfeiture, including the fact that the defendant's return to custody was not a result of the bondsman's efforts, the fact that the delay caused by the defendant's absence was substantial (more than two years), and the fact that the charges against the defendant were serious.

45. *Abel v. Tisdale,* 1980 OK 161, ¶ 20, 619 P.2d 608, 612.

46. For purposes of this discussion we will disregard serious questions of admissibility and probative value in regard to documents in the court file.

the dissent, we can arrive at the following "facts." Defendant Torres disappeared on 7 March 2001. On 24 April 2001, the bondsman submitted a written request to the district attorney's office asking for assistance in obtaining a federal warrant for defendant's arrest. *After submitting this request*, the bondsman received what appears to be an unsolicited letter (dated 30 April 2001)from the defendant's wife's aunt in Chickasha, in which the aunt said that the defendant was in Casa Blanca, Zacatecas, Mexico. The district attorney's office submitted a request to the United States Attorney's office for a federal warrant for defendant's arrest only after the expiration of the ninety-day grace period in which appellant could have obtained vacation of the forfeiture as a matter of course simply by returning the defendant to custody.

¶ 25 Appellant alleges that the bondsman pursued his request for assistance on more than one occasion, but there is no record support for this contention. The district attorney's office did not admit to any specific conversations with the bondsman, but conceded only that it received *a request* for assistance. Appellant alleged that he contacted American and Mexican officials in his effort to determine the proper way to proceed in Mexico to apprehend defendant. Again, no record support for this allegation exists. Every allegation made by appellant in the motion to set aside the forfeiture or in oral argument cannot be taken as true in the absence of some form of proof simply because the allegation was not specifically contested by the district attorney's office.

¶ 26 The efforts made by the bondsman in this case with respect to which we can view at least some supporting documentation or with respect to which we have some admission from the district attorney's office do not compare to the nature and extent of the efforts the bondsman made in *Vaughn*, which we did not believe justified reversal of the trial court's decision in that case. Moreover, a recapitulation of the other factors enunciated in *Vaughn* fails to provide any alternative basis for holding that appellant met its burden of proof.[47]

¶ 27 In conjunction with their rejection of *Vaughn's* multi-factor analysis, the dissenters justify their departure from that decision by pointing to the trial court's suggestion at the motion hearing that illegal measures to secure defendant's custody might have proved more fruitful than the legal route pursued by the bondsman. We detect here a concern that the judge may not have carefully and dispassionately examined the evidence. We have examined the trial court's order and see no indication that the he failed to consider that which appellant presented (regardless of its status as admissible forensic evidence) or that his decision rested on a conviction that only an illegal act would have been acceptable evidence of good cause.[48] In fact the trial court's order reflects factual findings very similar to those facts gleaned by the dissenters from their various sources, but the trial court's conclusion, unlike that of the dissent, is consistent with the controlling decision of this court in *Vaughn*. Nothing in the dissent's critique demonstrates that the trial court's decision was contrary to the dictates of reason and evidence.

¶ 28 We turn now briefly to the dissent's recitation of what "can be gleaned from statements and admission of counsel, the hearing transcript, comments of the trial judge and from the written order." The dissent lists four "facts" that it says fall into this category based on which it would hold

---

47. The defendant in this case was not in custody a the time of the hearing on the motion to vacate and in the absence of any evidence of the circumstance surrounding his return to custody, we cannot say what part the bondsman's efforts played in defendant's ultimate return. The length of the delay caused by defendant's non-appearance appears to have been slightly more than one year. We do not have any evidence regarding the cost and inconvenience to the government of regaining custody of the defendant.

The defendant failed to appear for trial and he was accused of a serious and heinous crime against a child.

48. *Thompson v. Inman*, 1971 OK 32, ¶ 30, 482 P.2d 927, 937; *Irwin v. Irwin*, 1966 OK 146, ¶ 12, 416 P.2d 853, 857; *Diem v. Diem*, 1962 OK 124, ¶ 11, 372 P.2d 19, 23; *Moree v. Moree*, 1962 OK 95, ¶ 6, 371 P.2d 719, 722.

that good cause has been shown.[49] A cursory examination of these facts underscores the problem of trying to determine, without the benefit of formal evidence, what happened. Direct and cross examination of the bondsman and other relevant witnesses, if any, may easily have cleared up the problems and ambiguities we see in the evidentiary picture presented by the dissent and discussed below.

¶ 29 As a preliminary matter, we cannot agree with the dissent that our jurisprudence sanctions the substitution of statements of counsel without qualification, a

hearing transcript, comments of the trial judge, and the written order for actual forensic evidence. We agree that stipulations of fact and admissions may serve as evidentiary substitutes that dispense with the need for proof of the conceded facts,[50] but reiterate that unsworn statements, whether made by a forensic advocate or by the trial judge, do not constitute evidence.[51] Additionally, the dissent's contention that the failure to contest a material fact may operate to cure an otherwise deficient record has no application in the context of a motion to vacate a bond forfeiture.[52]

**49.** The dissent makes the following factual findings based on statements and admissions of counsel, the hearing transcript, comments of the trial judge and the written order:
1. Torres was a Mexican national who fled the United States;
2. The bondsman got notice of Torres' whereabouts from his children's great aunt;
3. Once he had notice, in April, the bondsman requested that the District Attorney's Office assist in obtaining a federal warrant for Torres' return to the United States; and
4. The District Attorney's Office did not request such a warrant until August—well outside the ninety-day limit when the bond could have been exonerated simply by Torres' return.

**50.** *State ex rel. Okla. Bar. Ass'n v. Groshon*, 2003 OK 112, ¶ 8, 82 P.3d 99, 103 ("A stipulation of fact is an agreement by the parties that a particular fact (or facts) in controversy stands admitted. It serves as an evidentiary substitute that dispenses with the need for proof of facts that are conceded by the parties' agreement. Stipulations are subject to the approval of the court in which they are entered."); *Dutton v. Dutton*, 1923 OK 1075, ¶ 7, 223 P. 149, 150 (holding in a case in which the order recited that it was made upon admissions of the parties that "when a case is tried before a court without a jury and the attorneys representing the parties, in formal statements to the court agree upon the facts, the court is justified in entering judgment upon such agreements and admissions without the introduction of evidence to support such agreements and admissions"); *Macy v. Bd. of County Comm'rs*, 1999 OK 53, ¶ 3, n. 8, 986 P.2d 1130, 1134, n. 8 (admissions made in briefs may be considered as supplementing and curing an otherwise deficient appellate record).

**51.** *See e.g. Norman v. Trison Development Corp.*, 1992 OK 67, ¶ 12, n. 26, 832 P.2d 6, 11, n. 26 (stating that an unsworn in-court statement of a forensic advocate does not rise to evidence or to a stipulated fact); *State ex rel. Okla. Bar Ass'n v. Lacoste*, 1991 OK 51, ¶ 11, 813 P.2d 501, 506 (Opala, C.J. dissenting) (stating that review "may never hinge ... on a lawyer's "mouthings"—i.e.

unsworn statements of a forensic advocate on a material fact); *Hedges v. Hedges*, 2002 OK 92, ¶ 17, 66 P.3d 364, 371 ("A trial judge's statements in announcing the post-decree order do not constitute her "findings of fact" and will not be considered to vary the order whose terms are to be measured solely by the recorded journal entry.").

**52.** The district attorney's office filed no response to the bondsman's motion to set aside the bond forfeiture and the assistant district attorney's oral argument at the motion hearing addressed few, if any, of the factual allegations made in the motion. To the extent that the dissent's expressed view of the effect of a failure to contest a material fact would result in holding that the district attorney' office has admitted every factual allegation in the bondsman's motion that was not expressly contested, we strenuously disagree.

Under the provisions of Rule 4(e) of the Rules of the District Courts in effect at the time the instant motion was made, a party opposing a motion risked having it deemed confessed if he or she did not file a brief or list of authorities in opposition to the motion within a specified time. The district attorney's office did not file any response to the bondsman's motion in this case, but inasmuch as the provisions of Rule 4(e) were raised by the bondsman neither below nor on appeal, they cannot serve as a basis for considering the motion as a whole confessed or as on this basis constituting an admission of the facts alleged in the motion. *See Fulsom v. Fulsom*, 2003 OK 96, ¶ 5, n. 5, 81 P.3d 652, 654, n. 5. We know of no other basis for holding that the mere failure to controvert a material fact contained in a motion constitutes an admission or, as the dissent claims, cures a deficient record. The case cited by the dissent, *State ex rel. Okla. Bar Ass'n v. Busch*, 1998 OK 103, 976 P.2d 38, does not support the broad proposition for which it is cited. In *Busch*, both parties affirmatively conceded a fact that the written record appeared to contradict and the court said that it would resolve the problem by deferring to the respondent's concession in his brief.

¶ 30 The district attorney's office did not stipulate to any facts that would have established good cause under § 1332(C)(5)(b). The dissent cites only a single, narrow admission by the district attorney's office—that the bondsman made a request for help in obtaining a federal warrant and the district attorney's office acted on it. This admission is found in Schedule "A" of the district attorney's response to the Petition in Error. It states:

> After receiving information from the bondsman that the defendant had fled to Mexico the Tulsa County District Attorney requested that the United States Attorney file a federal charge of Uniform Flight to Avoid Prosecution which was filed."

The assistant district attorney had not previously made this admission during oral argument nor did his appellate brief repeat it, but we agree that, having made it in his response to the Petition in Error, he is bound by it. Yet it admits nothing more than that the district attorney's office received information from the bondsman and, after receiving the information, acted on it. It neither states nor fairly implies that the district attorney' office was dilatory or in any way impeded the bondsman's efforts to return the defendant to custody. In order to determine *that* we would have to know much more than is contained in this meager admission. For example, we would have to know when the bondsman provided the information to the district attorney's office and when in relation to receiving the information the district attorney's office acted on it. From this admission we do not even know whether the district attorney's office received the bondsman's request in time to act on it before the ninety-day grace period expired, or whether the district attorney's office received more than a single

request for assistance from the bondsman, or whether any of the *Vaughn* factors were met by the bondsman.

¶ 31 We turn now to discuss just a couple of the specific "facts" gleaned by the dissent and explain why we must remain unpersuaded that the trial court abused its discretion in refusing to vacate the forfeiture order. The dissent states that the bondsman got notice of defendant's whereabouts from his children's great aunt.[53] Indeed, the court file contains a letter dated 30 April 2001 from someone identifying herself as the defendant's wife's aunt, the children's great aunt. We have no idea if the letter was actually sent on that day or whether it was sent a week later or even a month later. The letter displays what appears to be a fax notation at the top dated 30 April, but there is nothing in the record explaining the significance of that notation. The letter is physically attached to another letter bearing the date 24 April with no explanation of how a letter dated 30 April came to be attached to a letter bearing a date a week earlier. There is also no evidence to indicate when the letter was received by the bondsman. Perhaps he received it on 30 April in fax form, perhaps not. Perhaps he received it in early May, perhaps not. This is important because the bondsman cannot have told the district attorney where the defendant was until the bondsman acquired that information himself.

¶ 32 The dissent finds that it was only after the bondsman learned of defendant's whereabouts from the great aunt's 30 April letter that he requested assistance from the district attorney's office. Yet the letter requesting assistance is dated prior to the letter from the children's great-aunt providing information on defendant's location. The facts as set out by the dissent simply do not

---

A motion is not a pleading. *Welch v. Simmons*, 1942 OK 181, ¶ 31, 126 P.2d 89, 93; 12 O.S.2001 § 2007(A). It is an application to the court for an order. 12 O.S.2001 § 2007(B). Pleadings require an answer, 12 O.S.2008(B); motions do not. Averments in pleadings to which a responsive pleading is required are admitted when not denied. 12 O.S.2001 § 2008(D). In motion practice, only facts affirmed by affidavit need be countered by counter-affidavit. *Cf. Kansas, Oklahoma & Gulf Ry. Co. v. Horath*, 1941 OK 353, ¶ 7, 118 P.2d 660, 661.

53. The transcript of the hearing on bondsman's motion reveals an exchange between the trial judge and appellant's counsel in which the trial judge states that the bondsman got notice of the defendant's whereabouts from a letter written by defendant's children's *grandmother*. The trial judge was mistaken. The letter was written by the children's *great aunt*, not their grandmother. While this is a small detail, it demonstrates the danger of relying on offhand comments made by someone who is not a witness.

hold together. Perhaps the bondsman submitted the request for assistance before he actually knew where the defendant was. If that is the case, then he would have had to have contacted the district attorney again in May, after receiving the great-aunt's letter, to provide the critical information to him, but we have absolutely no evidence that there was a contact in May. It certainly would have been in the bondsman's interest to provide this information to the district attorney, but we simply do not know from this record when he told the district attorney's office exactly where the defendant was.

¶ 33 Let us look at another problem with the dissent's proposed finding that the bondsman got notice of defendant's whereabouts from the children's great aunt. If that is true, then he determined defendant's location on or after 30 April 2001. Yet in the motion to set aside the bond forfeiture and again in appellant's brief on appeal, counsel states that the bondsman located the defendant *within one week of his failure to appear*. By our reckoning, that would be approximately 14 March 2001, six weeks before the great-aunt's letter was written. Adding still more confusion, appellant's counsel stated at the hearing that the bondsman learned of defendant's whereabouts from the great-aunt's letter of 30 April—as the dissent agrees. We could speculate that what really happened is that the bondsman learned that defendant was in Mexico within a week of his non-appearance, but that he only learned his precise location from the 30 April letter. If that is the case, then we would point out the obvious—that Mexico is a big country, and we do not know whether it would have been reasonable or even possible for the district attorney to request a federal warrant based on the bondsman's *belief* that the defendant was in Mexico without knowing where in Mexico he was.

¶ 34 These and other problems might have been resolved in appellant's favor had appellant simply offered evidence to prove its allegations. As we said earlier in this opinion, appellant presented a facially plausible argu-

ment for the forfeiture's vacation. We simply cannot agree with the dissent that sufficient facts can be gleaned from admissions and offhand comments to justify dispensing with formal proof and to conclude that the trial court's order resulted from abused discretion.

VI

SUMMARY

¶ 35 Appellant sought review of the trial court's denial of bondsman's motion to set aside a bond forfeiture. It raised an issue of public law which cannot be addressed because of a fatal procedural infirmity in its presentation before this court. Review also was sought of the trial court's exercise of discretion in refusing to vacate the bond forfeiture. From the record submitted for our review, we are unable to say that the trial court abused its discretion or that its order, which was not overcome by competent proof of any error in the proceeding, is not entitled to a presumption of correctness.

¶ 36 **THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE TRIAL COURT'S ORDER IS AFFIRMED.**

¶ 37 OPALA, V.C.J., LAVENDER, HARGRAVE, BOUDREAU and EDMONDSON, JJ., concur;

¶ 38 WATT, C.J., KAUGER and WINCHESTER, JJ., dissent;

¶ 39 HODGES, J., disqualified.

KAUGER, J., with whom WATT, C.J. joins, dissenting.

¶ 1 I agree with the majority that we may not, at this stage of the appellate proceedings, take notice of and make a determination of fact on whether the defendant, Pablo Torres (Torres), has been returned to custody and whether, consequently, Thomas Bouldin (bondsman) or the intervenor/appellant, Ranger Insurance Company (surety), may be entitled to have the bond forfeiture set aside on that basis.[1] Nevertheless, because the

---

1. Title 59 O.S. Supp.2003 § 1327(C) provides: "When a defendant does appear before the court as required by law and enters a plea of

guilty or nolo contendere, is sentenced or a deferred sentence is granted as provided for in Section 991c of Title 22 of the Oklahoma Stat-

record before this Court is sufficient to determine that the bondsman did everything legally within his power to see that Torres was returned to custody before forfeiture and because discretion was abused, I would reverse and remand with instructions to set aside the bond forfeiture. Therefore, I dissent.

## I.

¶ 2 SUFFICIENT FACTS MAY BE GLEANED FROM THE STATEMENTS AND ADMISSION OF COUNSEL, THE HEARING TRANSCRIPT, COMMENTS OF THE TRIAL JUDGE AND FROM THE WRITTEN ORDER REFUSING TO SET ASIDE THE FORFEITURE TO SUPPORT A FINDING OF GOOD CAUSE FOR FAILURE TO RETURN THE DEFENDANT TO CUSTODY PURSUANT TO 59 O.S. SUPP.2002 § 1332(C)(5).

¶ 3 Title 59 O.S. Supp.2002 § 1332(C)(5) [2] provides that the trial court has discretion to vacate an order of forfeiture and exonerate bond where good cause is shown for: 1) the defendant's failure to appear; or 2) the bondsman's failure to return the defendant to custody within ninety days. The majority refuses to take notice of record documents demonstrating the bondsman's good faith efforts because they were not introduced as evidence at the hearing on the motion to set aside the bond forfeiture or to consider the statements of counsel concerning the facts surrounding the bondsman's attempt to return Torres to custody.

¶ 4 Admissions of one's attorney in the line of duty are generally binding.[3] Schedule A of the response to the petition in error, filed on November 26, 2001, submitted by the Tulsa County Assistant District Attorney provides in pertinent part:

"... After receiving information from the bondsman that the defendant had fled to Mexico the Tulsa County District Attorney requested that the United States Attorney file a federal charge of Uniform Flight to Avoid Prosecution which was filed. A decision to make such a request is discretionary with the District Attorney and the filing of such a charge is discretionary with the United States Attorney...."

By making this statement in a pleading filed before this Court, the Assistant District Attorney essentially admits the bondsman requested his office to contact the United States Attorney for assistance in returning Torres to Oklahoma through the filing of a federal charge of Uniform Flight to Avoid Prosecution.

¶ 5 When parties are regularly before a trial court and their respective attorneys make formal arguments, those arguments may be sufficient to sustain or reverse a judgment even without the introduction of evidence to support agreements and admissions.[4] Additionally, the failure to contest

---

utes, in such event the undertaking and bondsman and insurer shall be exonerated from further liability."
Because the amended statute is substantially similar to its predecessor, the current statute is quoted. It should be noted that the Legislature has used the mandatory term "shall" when referring to the exoneration of liability. Use of "shall" is normally considered a mandate equivalent to the term "must," requiring interpretation as a command. *United States of America acting through the Farmers Home Admin. v. Hobbs*, 1996 OK 77, 921 P.2d 338, 342; *Heirshberg v. Slater*, 1992 OK 84, 833 P.2d 269, 275; *Fuller v. Odom*, 1987 OK 64, 741 P.2d 449, 452.

2. Title 59 O.S.2002 Supp. § 1332(C)(5) provides: "The court may, in its discretion, vacate the order of forfeiture and exonerate the bond where good cause has been shown for:
   a. the defendant's failure to appear, or

b. the bondsman's failure to return the defendant to custody within ninety (90) days."
Because the current version of the statute is identical to its predecessor, the 2002 amended statute is quoted.

3. *First Federal Savings & Loan Ass'n v. Nath*, see note 10, infra. See also, *State ex rel. Macy v. Board of County Comm'rs*, 1999 OK 53, ¶ 3, 986 P.2d 1130; *Halliburton Oil Producing Co. v. Grothaus*, 1998 OK 110, ¶ 11, 981 P.2d 1244; *Norman v. Trison Development Corp.*, 1992 OK 67, ¶ 2, 832 P.2d 6; *Reeves v. Agee*, 1989 OK 25, ¶ 15, 769 P.2d 745; *Silver v. Slusher*, 1988 OK 53, ¶ 6, 770 P.2d 878, *cert. denied*, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989).

4. *Dutton v. Dutton*, 1923 OK 1075, ¶ 0, 223 P. 149.

a material fact may operate to cure an otherwise deficient record.[5] Furthermore, statements of counsel, made deliberately and intelligently, constitute a high species of evidence and may operate to lessen the quantum of proof required of an opposing party.[6]

¶ 6 The Assistant District Attorney did not contest the fact that the bondsman asked for assistance from his office in requesting issuance of the federal warrant. Rather, in argument at the hearing to set aside the bond forfeiture on September 14, 2001, the Assistant District Attorney referred to the federal warrant and to the fact that it may not have been issued in a timely manner.[7]

¶ 7 When the trial court clearly takes cognizance of an item, although not officially entered into the appellate record, this Court will do likewise.[8] The bondsman's assertion—that notice of Torres' exact whereabouts came from a letter dated April 30, 2001, and written by Torres' children's great aunt—is supported by a letter which the trial court acknowledged.[9]

¶ 8 Facts not disputed by the record must be regarded as supporting the trial court's judgment.[10] However, where not impeached or contradicted, recitals of the trial court's judgment are presumed to be true and correct and act as *prima facie* proof of the facts stated therein.[11] The order, filed by the trial court on October 15, 2001, provides in pertinent part:

"... 4. Mr. Bouldin believes the defendant has fled to Mexico where he is a citizen.

Mr. Torres is not a citizen of the United States.

5. Mr. Bouldin requested that the Tulsa County District Attorney apply to the United States Attorney for a federal charge of Uniform Flight to Avoid Prosecution against Mr. Torres.

6. In August 2001, the Tulsa County District Attorney requested the Uniform Flight charge which was approved by the United States Attorney...."

Although there is nothing in the statements of the District Attorney or in documents recognized by the trial court demonstrating the exact date upon which the bondsman requested that the District Attorney seek a federal warrant to ensure Torres' return to custody, there is nothing in the transcript of the hearing which contradicts the bondsman's claim that the original request was made shortly after the great aunt advised him of Torres' whereabouts in late April. Nevertheless, it is clear from the trial court's recitation of the facts that the Tulsa County District Attorney's office did not make the request until some four months later.

¶ 9 The following can be gleaned from statements and admission of counsel, the hearing transcript, comments of the trial judge and from the written order: 1) Torres was a Mexican national who fled the United States; 2) the bondsman got notice of Torres' whereabouts from his childrens' great aunt; 3) once he had notice, in April, the bondsman requested that the District Attorney's Office assist in obtaining a federal warrant for Torres' return to the United States; and 4) the

---

5. *State ex rel. Oklahoma Bar Ass'n v. Busch*, 1998 OK 103, ¶ 8, 976 P.2d 38.

6. *American–First Title & Trust Co. v. First Federal Savings & Loan Ass'n of Coffeyville*, 1965 OK 116, ¶ 32, 415 P.2d 930.

7. Transcript of proceedings, September 14, 2001, statement of Assistant District Attorney Fred J. Morgan providing in pertinent part at p. 11: "... It's rare to see a flight warrant requested in a case that's not a homicide. In fact this is one of the first cases I can remember that was not a homicide case involving a flight warrant. Their concern that this request was not honored timely, I would say to the Court that it's not something that can be put together overnight...."

8. *United States Mortgage v. Laubach*, 2003 OK 67, ¶ 35, 73 P.3d 887.

9. Transcript of proceedings, September 14, 2001, statement of the court providing in pertinent part at p. 8: "... THE COURT: Letters from the grandmother from Chickasha in the court file...."

10. *First Federal Savings & Loan Ass'n v. Nath*, 1992 OK 129, ¶ 10, 839 P.2d 1336; *Davidson v. Gregory*, 1989 OK 87, ¶ 11, 780 P.2d 679.

11. *Schuman's v. Missy Dress Co.*, 1935 OK 471, ¶ 0, 44 P.2d 862.

District Attorney's Office did not request such a warrant until August—well outside the ninety-day limit when the bond could have been exonerated simply by Torres' return. These facts are sufficient to demonstrate good cause for the bondsman's failure to effect Torres' return pursuant to 59 O.S. Supp.2002 § 1332(C)(5).[12]

## II.

¶10 **INDICATIONS TO A BONDSMAN THAT THE ONLY WAY TO DEMONSTRATE GOOD CAUSE UNDER 59 O.S. Supp.2002 § 1332(C)(5) SUFFICIENT TO SET ASIDE A BOND FORFEITURE IS TO RESORT TO ILLEGAL ACTS IS AN ABUSE OF DISCRETION.**

¶11 In bail forfeiture proceedings, we overturn a trial court's ruling only when an abuse of discretion has occurred resulting in a decision against reason and evidence.[13] The majority makes much of the fact that the bondsman in *State v. Vaughn*, 2000 OK 63, 11 P.3d 211, presented better evidence of his efforts at producing the defendant than did the bondsman here and that those efforts were found insufficient to demonstrate a showing of good cause to vacate the bond forfeiture. I agree with that assessment. What the majority does not reveal is that I, and three of my colleagues, were dissenters to *Vaughn*. Therefore, four members of the Court would have found the evidence sufficient for a demonstration of good cause. I would overrule *Vaughn*. Nevertheless, there

is one proposition for which *Vaughn* stands with which I agree—the deferential abuse of discretion standard does not relieve this Court's duty to review the discretion exercised.[14]

¶12 Here, the facts demonstrate that the bondsman did everything within his power to have Torres returned to the United States through legal channels. Nevertheless, it appears from statements of the trial court that the only way the bondsman could have satisfactorily demonstrated good cause for not having returned Torres would have been to have used illegal means in an attempt to effectuate the return.

¶13 When counsel attempted to explain that the bondsman felt he had to use legal means for the return, the trial court inquired as to why he felt so limited.[15] When an explanation was offered indicating that the only legal way to return Torres was through the issuance of a warrant, the trial court suggested he could have chosen to bribe officials of the Mexican government.[16] Even if made facetiously, the statement implied that only an illegal act would have been acceptable evidence of good cause for the reinstatement of the forfeited bond.

¶14 Where a bondsman demonstrates that all legal steps have been taken to return a defendant for appearance before the trial court, good cause within the meaning of 59 O.S. Supp.2002 § 1332(C)(5) [17] is demonstrated. Even with such a showing, the trial court may, pursuant to the statute, exercise its discretion and deny relief. However, a

---

**12.** Title 59 O.S. Supp.2002 § 1332(C)(5), see note 2, supra.

**13.** *State v. Vaughn*, 2000 OK 63, ¶25, 11 P.3d 211.

**14.** *Id.*

**15.** Transcript of proceedings, September 14, 2001, providing in pertinent part at p. 5:

"... This case was somewhat different because the defendant was a Mexican citizen who had gone back to Mexico. He was living at his mother's house in Zacatecas, Mexico, and was located by the bondsman and at that point in time had to, in his opinion anyway, had to do it through legal channels, and was told this is the way to do it.

THE COURT: Why? ..."

**16.** Transcript of proceedings, September 14, 2001, providing in pertinent part at p. 10:

"... In this instance, his choice was to follow the regulations as set out by the Mexican government, which would include or at least request cooperation with the Tulsa County District Attorney's Office and the U.S. Attorney's Office here, without which he could not return this gentleman to custody. It would have been an impossibility without himself breaking the law, possibly international law.

THE COURT: Possibly he could have given the Federales $1,000 and expedited the whole thing too, you know...."

**17.** Title 59 O.S. Supp.2002 § 1332(C)(5), see note 2, supra.

trial court abuses its discretion when it signals to a bondsman that the only way to demonstrate good cause sufficient to set aside a bond forfeiture is by resorting to illegal measures.

## CONCLUSION

¶ 15 There is little doubt that the attorneys here could have made review of the instant cause a less weighty undertaking by better perfecting the evidentiary record. It is also understood that our trial courts are burdened with a heavy workload and that the failure of a defendant to appear as scheduled makes those duties more challenging. Nevertheless, there is sufficient evidence in the statements and admission of counsel, the hearing transcript, the comments of the trial judge and from the written order to allow review of the good cause issue. Furthermore, we may not avoid our responsibility to review discretionary acts and to disavow judicial comments leading individuals to conclude that the only way to obtain relief is by resorting to illegal means. Therefore, with the record available and the evidence of discretionary abuse, I would reverse and remand with instructions to set the bond forfeiture aside.